**MIDDLESEX COUNTY BOARD OF CHOSEN FREEHOLDERS,**
Plaintiff,

v.

**STATE OF NEW JERSEY, DEPARTMENT OF ENVIRONMENTAL PROTECTION; Robert Hughey, Commissioner of the Department of Environmental Protection; Board of Chose Freeholders of the County of Morris Board of Chosen Freeholders of the County of Somerset; Board of Chosen Freeholders of the County of Union; and Lee Thomas, Administrator of United States Environmental Protection Agency, Defendants.**

**The Township of Rockaway, Intervenors.**

**Civ. A. No. 86–126.**

United States District Court, D. New Jersey.

Oct. 2, 1986.

Herbert M. Strulowitz, Asst. Morris Co. Counsel, Randolph, N.J., for Morris Co.

Greenberg & Prior, Trenton, N.J., for plaintiff Middlesex Co.

William Ozzard, Somerville, N.J., for Somerset Co.

Jeremiah O'Dwyer, Law Dept., Union Co. Admin. Bldg., Elizabeth, N.J., for Union Co.

Deputy Atty. Gen. Paul Schneider, Trenton, N.J., for State of N.J., Dept. of Environmental Protection.

Frederic J. Sirota, Morristown, N.J., for Rockaway Tp.

Ralph Marra, Asst. U.S. Atty., D.N.J., Newark, N.J., for U.S.

Ronald Kevitz, Asst. Morris Co. Counsel, Flanders, N.J.

OPINION

HAROLD A. ACKERMAN, District Judge.

This is an action brought by the Middlesex County Board of Chosen Freeholders (hereafter "Middlesex") pursuant to the citizen suit provision of the Resource Conservation and Recovery Act (hereafter "RCRA"), 42 U.S.C. § 6972(a)(1)(A) and (B).

The complaint concerns the current conditions at the solid waste disposal facility operated by Edgeboro Disposal Inc. in the Township of East Brunswick in Middlesex County. The Edgeboro facility is authorized to operate by defendant New Jersey Department of Environmental Protection (hereafter "DEP"). Use of this particular landfill is part of the waste management plan for Middlesex, which county is a solid waste management district under the New Jersey Solid Waste Management Act, N.J. S.A. 13:1E–1 *et seq.*

Every other county in New Jersey is also a solid waste management district with obligations to provide for the disposal of solid waste within its borders. Some counties, including defendants Morris, Somerset, and Union, have not yet provided means to meet the waste disposal needs of their communities. As a result, in order to deal with alleged emergency conditions in those counties, DEP has issued orders calling for solid waste in those three counties to be taken to Edgeboro. Initially, when disposal of waste from Morris, Somerset and Union was begun at Edgeboro, that was but one of three active landfills in Middlesex, and the waste from the other counties was dispersed among the three sites so that the burden on each was manageable. However, the other two Middlesex landfills are no longer in operation having been closed or reached capacity. Now all out-of-county materials coming into Middlesex go to Edgeboro, which must also continue to satisfy the need for solid waste disposal from communities in Middlesex.

Because the flow from the other two Middlesex landfills was redirected to Edgeboro, in addition to further redirection of waste formerly sent to the Hamm's Sanitary Landfill located outside of Middlesex,

plaintiff contends that the amount of waste being disposed of at Edgeboro has created an imminent hazard.

Edgeboro has been repeatedly cited for numerous violations of New Jersey regulatory requirements governing landfills which plaintiff contends are as a result of the operator's inability to cope with conditions imposed on him by DEP. There have been repeated notices of violations for failure to contain odors, failure to apply proper earth cover, failure to contain dust and other items too numerous to mention. In addition to citations for what is happening at the landfill itself, plaintiff contends that the re-routing of trucks from all of the other landfills has resulted in enormous traffic problems with fifteen hundred or so trucks a day seeking to enter Edgeboro. This in turn has resulted in significant air pollution problems in the form of carbon monoxide build up in the areas immediately outside of Edgeboro and the heart of Middlesex County. The site of most of this build up is one in which the carbon monoxide level was already many times over that which is deemed acceptable under the New Jersey State Implementation Plan (SIP) adopted pursuant to federal clean air standards.

Plaintiff also contends that at the current rate of solid waste flow into Edgeboro, it will reach its ultimate capacity not more than two years from now and will therefore have to be closed at that time, leaving Middlesex County without any of the three landfill sites it counted on when it prepared its solid waste disposal plan required by New Jersey law and approved by DEP. As of the time of the approval of the plan, even leaving aside the other facilities, the useful life of Edgeboro was expected to last until 1993. Only then would Middlesex have been in the position of needing some alternative means of disposal so that dating from the present, seven years would have remained for action to be taken. Thus, when Edgeboro was full, some other means of disposal would have been on line and ready to go. Now, plaintiff contends that three-quarters of that time has been eliminated by virtue of the influx of waste from outside of Middlesex County.

Substantial and numerous other litigation has also been instituted in the state courts arising out of this situation. All defendants have moved to dismiss plaintiff's complaint in large part because of their position that this suit duplicates actions presently pending or already decided in the state courts. Plaintiff contends that the instant case differs because it concerns an imminent and substantial endangerment to health and environment under RCRA.

Presently before me are the following motions:

1. Motion to dismiss by the DEP and Morris County, which are joined by Somerset and Union Counties;

2. A motion to intervene by Rockaway Township; and

3. A motion to join as necessary parties the New York State generators and transporters of solid waste.

I note that a motion to dismiss brought by the United States Environmental Protection Agency had already been granted on June 9, 1986.

As the second two motions are only relevant if plaintiff's complaint is not dismissed, I will first address defendants' motions to dismiss.

In considering a motion to dismiss, I must accept as true the factual allegations of the complaint and I may only dismiss the complaint if it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102–103, 2 L.Ed.2d 80 (1957); *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Because all defendants' motions to dismiss raise common elements of fact and issues of law, I will address them jointly to a great extent. Defendants first contend that plaintiff's suit should be dismissed because defendants are taking two bites at the apple by relitigating issues in federal court which have already been decided by the state

courts and administrative agencies of New Jersey.

A federal court assessing the issue or claim preclusive effect of a state court decision "must give to the state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School District Board of Education,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984). *See also Al-Khazraji v. St. Francis College,* 784 F.2d 505, 509 (3d Cir.1986).

In *University of Texas v. Elliot,* —— U.S. ——, ——, 106 S.Ct. 3220, 3226, 92 L.Ed.2d 635 (1986), the Court expanded the *Migra* rule, holding that federal courts must apply the claim and issue preclusion law of the forum state not only to judgments rendered in state courts following traditional litigation, but also to agency decisions rendered after quasi-judicial proceedings. The preclusive effect of the decisions of the New Jersey courts and administrative agencies must, then, be determined by reference to the law of New Jersey.

New Jersey courts describe *res judicata* as "an ancient doctrine which contemplates that a controversy between parties is once fairly litigated and determined, it is no longer open to relitigation." *Lubliner v. Board of Alcoholic Beverage Control,* 33 N.J. 428, 435, 165 A.2d 163 (1960). Prerequisites to the bar of further litigation ordinarily include the entry of a final judgment, *The Hills Development Co. v. Township of Bernards,* 103 N.J. 1, 59, 510 A.2d 621 (1986), and a full and fair opportunity to litigate, *Lubliner, supra,* at 437–41, 165 A.2d 163.

New Jersey has adopted the "entire controversy doctrine," a near relative of the doctrine of *res judicata,* by which a party is required to assert all possible claims related to a single controversy in the same action, or be banned from raising them in future actions. New Jersey Court Rule 4:27–1(b); *Malaker Corp. Stockholders Protective Committee v. First Jersey National Bank,* 163 N.J.Super. 463, 395 A.2d 222 (App.Div.1978), *certif. denied,* 79 N.J. 488, 401 A.2d 243 (1979). New Jersey courts bar the relitigation of finally determined issues, through the doctrine of collateral estoppel, when that issue has been squarely placed in issue, and the party against whom the bar is asserted has had "a full and fair opportunity to litigate the issues in the first action." *Eatough v. Board of Medical Examiners,* 191 N.J.Super. 166, 175, 465 A.2d 934 (App.Div.1983).

Here, plaintiff could not have raised its RCRA claim in the Superior Court of New Jersey. 42 U.S.C. § 6972(a) provides in relevant part:

Any action under paragraph (a)(1) of this subsection shall be brought in a district court for the district in which the alleged violation occurred or the alleged endangerment may occur.

This provision constitutes a grant of exclusive jurisdiction over citizen's suits pursuant to RCRA to the United States Courts. First, shall is a word which usually is interpreted to mean that something that shall be done is mandatory rather than discretionary. *See United States v. Kravitz,* 738 F.2d 102, 104 (3d Cir.1984).

Secondly, the legislative history for citizen suits under RCRA indicates that Congress did not contemplate that RCRA suits would be brought in State courts. In House Report No. 98–198, U.S.Code Cong. & Admin.News 1984, 5576, regarding the Hazardous and Solid Waste Amendments of 1984, there was discussion of the amendment to the citizen's suit provision granting the right to sue to abate an imminent and substantial endangerment pursuant to the standards of liability for a similar action brought by the Administrator of the Environmental Protection Agency (EPA) under 42 U.S.C. § 6973. The Report states:

Although the Committee has not prohibited a citizen from raising claims under state law in a Section 7002 action, the Committee expects courts to exercise their discretion concerning pendent jurisdiction in a way that will not frustrate or delay the primary goal of this provision, namely the prompt abatement of imminent and substantial endangerments.

H.R. Report No. 98–198 at page 53, reprinted in 1984 *U.S.Code Cong. and Ad. News* at page 5612.

The reference to the right of a citizen to raise state law claims which the court might consider under the doctrine of pendent jurisdiction indicates to me that Congress contemplated only actions in federal district courts. Pendent jurisdiction is a doctrine that applies only to federal courts accepting state law claims. Were citizens free to bring these actions in state court, the Committee would not have been discussing whether or not state law claims were even cognizable.

Lastly, the statute itself refers to the Federal Rules of Civil Procedure in 42 U.S.C. § 6972, making it unlikely that Congress thought actions would be allowed in state courts.

As there would have been no jurisdiction in state court for a RCRA suit, the entire controversy doctrine is inapplicable. Plaintiff did not have a full and fair opportunity to litigate the RCRA issue. Plaintiff's complaint cannot be dismissed on that basis.

Defendants also seek to dismiss plaintiff's complaint on the grounds that they have not exhausted all administrative remedies before bringing this suit. The cases they cite, however, for this proposition are inapposite.

■ There is no exhaustion of administrative remedies requirement for citizen suits under § 6972. The prerequisites for bringing a citizen's suit are all set forth in § 6972.

An action pursuant to § 6972(a)(1)(B) may not be maintained if the Administrator of the EPA is engaging in certain activities designed to prevent the alleged endangerment. The Administrator is not pursuing any of the activities enumerated in the statute.

A citizen's suit is also barred if the state is pursuing a citizen's suit itself, is engaged in a removal action under § 104 of CERCLA or has initiated a study under § 104 of CERCLA together with a remedial

action. While the state has instituted certain actions, it is not engaged in any proceeding listed in the RCRA statute.

Congress has placed no other restrictions on the institution of actions such as plaintiff's. While defendant's concern for duplicitious litigation is certainly well founded and understandable, it appears that Congress took no steps to bar a RCRA citizen suit for any other reason other than that referred to above. It is apparently contemplated by the legislative scheme that state proceedings could be going on relating to a waste disposal facility and a citizen suit relating to that same facility could proceed under RCRA in federal court. Section 6972(f) specifically reserves the right to bring all other statutory or common law actions in addition to a RCRA citizen suit. The failure to exhaust administrative remedies is, therefore, not relevant here.

■ Defendants also contend that plaintiff fails to state a cause of action under the RCRA statute. I note at the outset that any reliance for this theory placed on *City of Gallatin v. Cherokee County,* 563 F.Supp. 940 (E.D.Tx.1983) is in error as that holding has been completely repudiated by Congress in its 1984 amendments to RCRA.

Aside from the obvious fact that the *Gallatin* decision deals with an entirely different claim than one of imminent and substantial endangerment to health or environment, which was not even part of the citizen's suit provision in 1983, it is no longer of any force or effect on the issues it did address. In the legislative history accompanying the 1984 amendments to RCRA, the House Committee specifically addressed *Gallatin:*

A Federal district court in Texas has recently issued an opinion concerning the open dumping prohibition in Section 4005(a) of RCRA which holds that (1) open dumping is not prohibited in a state until its solid waste plan is approved by EPA, and (2) the open dumping prohibition. (*sic*) *City of Gallatin vs. Chero-*

*kee County*, No. TY–81–107 CA [563 F.Supp. 940] (E.D.Tex. January 17, 1983).

This opinion misinterprets Section 4005(a). In enacting this provision, it was Congress's intent that the open dumping prohibition go into effect upon promulgation of EPA regulations under Section 1008(a)(3) definding (sic) open dumping, and that the prohibition be defined on the basis of those regulations. It was also Congress' intent that the person seeking to enforce the open dumping prohibition bring suit—not against the Federal Government or the state—but against persons engaged in the act of open dumping, and that Federal district courts be authorized to enjoin such persons directly. Although the Committee believes that Congress' intent is clear on the face of the statute. In light of the *City of Gallatin* decision, the Committee is amending Section 4005(a) (and 7002(a)(1)) to further emphasize and clarify its original intent. (The last two sentences were probably intended to be combined as a single sentence) H.R. Report No. 98–198 at pages 53–54, reprinted in 1984 *U.S.Code Cong. and Ad.News* at pages 5612–5613.

Plaintiff alleges that there is an imminent and substantial endangerment to health or the environment as a result of the conditions at Edgeboro. Defendants contend that plaintiff has not stated a cause of action under RCRA.

Section 6972, the citizen suit provision of RCRA provides as follows:

(a) In general

Except as provided in subsection (b) or (c) of this section, any person may commence a civil action on his own behalf—

(1)(A) against any person (including (a) the United States, and (b) any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter; or

(B) against any person, including the United States and any other governmental instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution, and including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment; or

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

This is a new right to sue for citizens added to the statute by the 1984 amendment. The House Report states the following:

Section 11 confers on citizens a limited right under Section 7002 to sue to abate an imminent and substantial endangerment pursuant to the standards of liability established under Section 7003. This right can only be exercised if the Administrator (following notice of the intended litigation) fails to file an action under Section 7003. H.R. Report # 98–198 at page 53, reprinted in 1984 *U.S.Code Cong. and Ad.News* at page 5612.

Thus, this recent amendment to § 7002 is designed to provide a private means of obtaining the same relief that the EPA Administrator has previously been authorized to seek under RCRA by § 7003. The legislative history to § 7003 is, therefore, applicable to § 7002, insofar as what type hazard Congress intended to reach.

As initially enacted, § 7003 allowed the EPA Administrator to take action where an imminent hazard was present. By amendment in 1980, the language was changed to the present "imminent and substantial endangerment" standard. The legislative history notes that the amendment was meant to be like those in other environmental

statutes such as § 504 of the Clean Water Act, § 303 of the Clean Air Act and § 1431 of the Safe Drinking Water Act, all of which are imminent and substantial endangerment provisions, and to act as a codification of "common law public nuisance remedies." *See* S.R. Number 96–172 at p. 5, reprinted in *1980 U.S.Code Cong. and Ad.News* 5019, at page 5023.

The statute, therefore, incorporates legal theories used to assess liability for creating a public nuisance and to determine the appropriate remedies utilized in common law for such terms as "imminent" and "substantial." The statute is, however, to be read more liberally in terms of determining who is contributing to the substantial endangerment. *Id.*

In *United States v. Price*, 688 F.2d 204 (3d Cir.1982), the Third Circuit addressed an action brought by the Administrator under § 7003 addressing hazardous wastes. Some of their conclusions regarding the statute are equally applicable to citizen suit provisions over solid waste.

The court noted that the language of the statute was "expansive" and intended to confer "overriding authority to respond to situations involving a substantial endangerment to health or to the environment." 688 F.2d at 213. The Third Circuit also found the statutory language and the legislative history made it clear that

> Congress, by enacting § 7003, intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risks posed by toxic waste.

*Id.* at 213–214.

The broad reading of RCRA by the Third Circuit should apply to plaintiff's suit here also. Thus, I reject defendant's attempt to have this court read such a broad remedial statute narrowly. Although I make no findings at this stage as to the merits of plaintiff's claim, under a motion to dismiss standard, plaintiff has clearly stated a claim under 42 U.S.C. § 6972. If, as plaintiff contends, the dumping at Edgeboro constitutes an imminent and substantial endangerment, this court has jurisdiction.

■ Although Middlesex states a cause of action under RCRA, this court may only exercise its jurisdiction pursuant to RCRA to the extent permitted by the eleventh amendment to the Constitution. Defendants contend that under *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), plaintiff's complaint is barred by the eleventh amendment. While this case certainly raises serious concerns relating to federal/state comity, I do not find that the suit is barred by the eleventh amendment.

In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held that when a plaintiff sues a state official alleging a violation of federal law, the federal court may award an injunction that governs the official's future conduct, but not one that awards retroactive monetary relief. This principle was left intact throughout the *Pennhurst* cases. Indeed, the Supreme Court's last ruling in *Pennhurst* emphasized that the eleventh amendment prohibits federal courts only from ordering state officials to conform their conduct to state law.

At issue in this case is solely the state's compliance with federal law—the RCRA statute. I warn plaintiff however, that it may not indirectly seek to force compliance with the various state regulatory schemes. I remind plaintiff of the court's admonition in *Pennhurst* that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the eleventh amendment." 465 U.S. at 106, 104 S.Ct. at 911.

I will not allow relitigation in any way of any of the issues that have already been tried or should have been tried in the state courts. Although the issues litigated here certainly derive from the same facts, the relief possible is limited solely to the scope of RCRA. Where RCRA conflicts with or duplicates other regulatory schemes already litigated in state court, I will have to

apply the *res judicata* and eleventh amendment issues they raise in more detail than is possible here at this early stage. At this point all that is at issue is whether I have jurisdiction of a claim plaintiff has brought under RCRA.

Defendants also contend that plaintiff has not complied with the notice requirement of 42 U.S.C. § 6972. Section 6972 requires only that at least 90 days before instituting an action under the imminent and substantial endangerment provision, notice of the endangerment be given to the Administrator of EPA, the state and the persons contributing to the endangerment. Plaintiff has done this, and no other notice requirements are applicable.

While the state is diligently prosecuting a claim regarding this issue in the state courts, it is not pursuing a RCRA claim. As discussed earlier, only certain state actions preclude a concurrent citizen suit, none of which are present here. The last reason defendants raise in support of their motion to dismiss is that this court should abstain from exercising jurisdiction under various abstention doctrines.

The Third Circuit has very recently summarized the various theories of abstention in *United Services Automobile Association v. Muir*, 792 F.2d 356 (3d Cir.1986). There the court emphasized:

> Abstention from the exercise of federal jurisdiction is, in all its forms, "the exception, not the rule".... It is an extraordinary and narrow exception to the district court's duty to adjudicate a controversy properly before it, justified only in the exceptional circumstances where resort to state proceedings clearly serves an important countervailing interest.

*Id.* at 360–61 (quoting *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)).

■ Defendants first urge this court to abstain under the *Pullman* doctrine. The *Pullman* doctrine holds "that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).

Here, the federal question to be decided is not a "substantial federal constitutional question," but solely an application of RCRA, a remedial environmental statute codifying in certain respects common law nuisance theories. In addition, I will not entertain attempts to get this court to rule on the state law issues that have been litigated in prior actions. As they have already been litigated, they are also no longer unsettled questions of state law. I, accordingly, find *Pullman* abstention to be inappropriate.

Defendants also urge *Burford* abstention on the court. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). *Burford* abstention is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar." *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1244.

■ If the exercise of federal review would be disruptive of state efforts to establish a coherent policy, and the policy concerns complicated local matters, abstention may be justified. *Id.*, (cited in *Muir*, 792 F.2d) at 364. "Generally, *Burford* abstention is justified where a complex regulatory scheme is administered by a specialized state tribunal having exclusive jurisdiction." *Muir*, 792 F.2d at 364 (citing *Allegheny Airlines, Inc. v. Pennsylvania Public Utility Commission*, 465 F.2d 237, 241–45 (3d Cir.1972), *cert. denied*, 410 U.S. 943, 93 S.Ct. 1367, 35 L.Ed.2d 609 (1973)). Here, New Jersey contends that because it has enacted the Solid Waste Management Act, N.J.S.A. 13:1E–1 *et seq.*, it has established a comprehensive scheme for management of solid waste disposal which should not be disrupted by federal assertion of jurisdiction. There can be no doubt here that there is a significant state effort to establish a coherent policy in the solid waste disposal area.

■ While I in no way wish to minimize the importance of the state's role in this area, a key distinction with this case and those defendants have cited which abstained under *Burford* is that the state tribunal in charge of this area does not have exclusive jurisdiction and there is a federal statute, RCRA, at issue which grants federal courts exclusive jurisdiction. Solid waste disposal controversies are governed not only by the N.J. DEP, but by the U.S. EPA and by various federal statutes authorizing citizen suits under certain circumstances.

The Supreme Court addressed a similar conflict in *Colorado River, supra,* where it stated:

> To be sure, the federal claims that are involved in the case go to the establishment of water rights which may conflict with similar rights based on state law. But the mere potential for conflict in the results of adjudications, does not, without more, warrant staying exercise of federal jurisdiction.

*Id.* 424 at 815–16, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483. It is not surprising that a problem of the magnitude presented here should involve both federal and state regulatory schemes, but numerous cases of such a nature have arisen over the years and federal courts have found ways to harmonize the two where necessary.

■ Lastly, defendants ask this court to abstain under the *Younger* doctrine. Under *Younger,*

> interests of comity and federalism counsel federal courts to abstain from jurisdiction whenever federal claims have been or could be presented in ongoing state judicial proceedings that concern important state interests.

*Hawaii Housing,* 467 U.S. at 237–38, 104 S.Ct. 2321 at 2327–28.

Here, I have already explained why plaintiff's RCRA claim could not have been presented to the state courts, so this doctrine is equally inapplicable. I, accordingly, do not find it appropriate to abstain from exercising jurisdiction in this case. I am not unmindful of the mine field that awaits this litigation in attempting to avoid relitigating the state causes of action, but I find that this case does not present one of those extraordinary and narrow exceptions to the district court's duty to adjudicate a controversy properly before it.

■ Defendants' motions to dismiss are, accordingly, denied in all respects and I will turn to the motion to intervene and the motion to join necessary parties. The Township of Rockaway has petitioned the court for leave to intervene as of right in this action, and in the alternative, for permissive intervention. Site 6–18 in the Township of Rockaway has been designated under the Solid Waste Management Act as the site for Morris County's landfill. Rockaway contends that the development of such landfill will cause great harm to the citizens of Rockaway and that there is no other party to this litigation which would adequately represent the interest of the Township of Rockaway.

Intervention should be granted as a right upon timely application establishing that the intervenor has an interest in the subject matter of the litigation that may, as a practical matter, be impaired by the outcome of the litigation and that such interest is not adequately represented by existing parties. *F.R.Civ.P.* 24(a)(2); *Restor-A-Dent Dental Laboratories v. Certified Alloy Products, Inc.,* 725 F.2d 871, 874 (2d Cir.1984).

Rockaway's position is quite different in this action than plaintiff's because Rockaway has no cause of action under RCRA, as does plaintiff. Rockaway's intervention would be simply to relitigate the same issues that have been litigated in the state courts. Their involvement in this suit would raise the obstacles plaintiff has avoided such as res judicata, abstention and failure to exhaust administrative remedies.

As Rockaway seeks to enter this litigation only to assert that site 6–18 cannot be a landfill site, their intervention and crossclaim are improper as this issue has already been decided by the state courts and agencies. The motion to intervene is accordingly denied.

Lastly, I turn to defendant Somerset County's motion to join the waste haulers situated in the state of New York who use the Edgeboro Landfill. Rule 19(a) of the Federal Rules of Civil Procedure states that where joinder is feasible, joinder of additional parties is necessary if, in the absence of such parties, (1) complete relief cannot be accorded among those already parties, or (2) the parties to be joined claim an interest in the subject of the action and are situated such that disposing of the action in their absence may impede their ability to protect their interest, or the persons already parties in the action will be subjected to a substantial risk of incurring double, multiple or otherwise inconsistent obligations as a result of the unjoined parties' interest.

Here I am not convinced that in the absence of additional out-of-state waste haulers that I will not be able to grant complete relief among those already parties to the action. With or without the out-of-state haulers, the only issue before this court under RCRA is whether a substantial or immediate threat to health or environment exists. As defendant has failed to meet the first requirement of rule 19, defendant's motion is denied. An order embodying all of these rulings accompanies this opinion.