**COALITION FOR HEALTH CONCERN; Natural Resources Defense Council, Inc.; Sierra Club, Plaintiffs,**

v.

**LWD, INC.; Phillip J. Shepherd, in his official capacity as Secretary of the Kentucky Cabinet for Natural Resources and Environmental Protection; Kentucky Natural Resources & Environmental Protection Cabinet, Phillip J. Shepherd, Secretary, Defendants.**

Civ. A. No. C92–0297–P(J).

United States District Court,
W.D. Kentucky,
Paducah Division.

Oct. 21, 1993.

W. Henry Graddy, IV, Todd E. Leatherman, Reeves & Graddy, Versailles, KY, and Mick Harrison and Richard Condit, Washington, DC, for Coalition for Health Concern.

Nancy Marks, James F. Simon, Katherine Kennedy and Turner R. Odell, Jr., Natural Resources Defense Counsel, New York City, for Natural Resources Defense Council, Inc.

W. Henry Graddy, IV and Todd E. Leatherman, Reeves & Graddy, Versailles, KY, for Sierra Club.

George L. Seay, Jr., Wyatt, Tarrant & Combs, Frankfort, KY, Virginia Hamilton Snell, M. Stephen Pitt, Wyatt, Tarrant & Combs, Lexington, KY, and B.M. Westberry, Paducah, KY, for LWD, Inc.

Joyce M. Albro and John Horne, Frankfort, KY, for Phillip J. Shepherd, Secretary, Kentucky Cabinet for Natural Resources and Environmental Protection and Kentucky Natural Resources & Environmental Protection Cabinet.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

This is a citizen suit brought under Section 7002 of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, and Section 310 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9659. Plaintiffs are environmental groups with members who live near Defendant LWD, Inc.'s hazardous waste incineration and disposal facilities at Calvert City, Kentucky, and an individual who also lives near the facilities. They claim that LWD is operating its facilities in violation of several provisions of RCRA and CERCLA, and that Defendant Phillip J. Shepherd, Secretary of the Kentucky Cabinet for Natural Resources and Environmental Protection, has failed to perform his statutory duty to enforce RCRA against LWD. The crux of the complaint is that LWD lost its interim authorization to operate without a hazardous waste permit pursuant to 42 U.S.C. § 6925(e) by repeatedly failing to furnish information reasonably required to process its permit application, and that the Secretary failed to take final action on the permit by November 8, 1989 as required by 42 U.S.C. § 6925(c)(2)(A)(ii). Plaintiffs seek an injunction terminating the operation of LWD's facilities, an order requiring the Secretary to deny LWD's permit application(s), civil penalties against LWD, and other relief.

The matter is before the court on Defendants' motions to dismiss based alternatively on the lack of subject matter jurisdiction; the doctrines of abstention, ripeness, and primary jurisdiction; and the Full Faith and Credit Act.

## SUBJECT MATTER JURISDICTION

1. *Diligent Prosecution by the Cabinet*

This court has jurisdiction over citizen suits alleging violations of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to RCRA. 42 U.S.C. § 6972(a)(1)(A). However, 42 U.S.C. § 6972(b)(1)(B) prohibits such actions when the State in which the alleged violation occurs "has commenced and is diligently prosecuting a civil or criminal action in a court of the United States or a State" to require compliance with such provisions. The Secretary argues that this action is prohibited because the Cabinet has diligently enforced Kentucky's hazardous waste program (enacted pursuant to § 6926(b) of RCRA) with respect to LWD. LWD argues that the Cabinet is in the process of "diligently resolving issues" relating to LWD's permit.

Administrative enforcement, however diligent, does not satisfy § 6972(b)(1)(B), because the statute expressly requires that the State must have taken court action. *Lykins v. Westinghouse Elec. Corp.*, 715 F.Supp. 1357 (E.D.Ky.1989).

Construing virtually identical language in the Clean Air Act, The Third Circuit held that an administrative hearing is equivalent to court action under certain circumstances. *Baughman v. Bradford Coal Co.*, 592 F.2d 215, 219 (3d Cir.1979), *cert. denied*, 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979). The court extended this interpretation to § 6972(b)(1)(B) in *Profitt v. Commissioners*,

*Bristol Tp.,* 754 F.2d 504 (3d Cir.1985). Construing the same language in the Clean Water Act, the Second and Ninth Circuits rejected the *Baughman* approach as contrary to the plain language of the statute. *Friends of the Earth v. Consolidated Rail Corp.,* 768 F.2d 57 (1985); *Sierra Club v. Chevron U.S.A., Inc.,* 834 F.2d 1517 (9th Cir.1987).

In *Lykins,* Judge Siler adopted the *Friends of the Earth* rationale and held that an administrative proceeding already begun by the Cabinet does not preclude a RCRA citizen suit in federal court. This court agrees. Congress demonstrated an ability to explicitly provide that either administrative or court action will preclude a citizen suit in § 6972(b)(2)(B) and (C), as it has done in other environmental statutes. *See Friends of the Earth* at 63. It chose not to do so in § 6972(b)(1)(B).

■ Neither the EPA nor the State has commenced a court action to require LWD's compliance with the RCRA provisions cited in Plaintiffs' complaint. LWD argues that the Cabinet's present enforcement activities with regard to LWD constitute court action because they derive directly from a Franklin Circuit Court order that resolved, "in consolidation with other actions," the suit of *Natural Resources and Environmental Protection Cabinet v. LWD, Inc., et al.,* Civil Action No. 89–CI–1183. That lawsuit concerned the corporate reorganization of LWD. The January 23, 1992 order that resolved it had no bearing on the issues raised in this action.

LWD apparently refers to a separate order entered on the same day which resolved Civil Action No. 89–CI–1592, an action brought by LWD against the Cabinet to enjoin the Cabinet from enforcing its Final Permit Decision denying LWD's permit application. In that order, the Franklin Circuit Court found *inter alia* that the Cabinet had failed to conduct a hearing on the violations giving rise to its decision; that the Cabinet did not rely on the failure of a trial burn or "any other technical ground" as a basis for its decision; and that the issues raised in LWD's complaint were most appropriately decided before the Cabinet. It therefore enjoined the Cabinet from enforcing its decision and remanded the case to the Cabinet

for determination of all issues relating to the permit denial in accordance with proper procedures.

Rather than conducting a hearing on remand, the Cabinet entered into an agreed administrative order with LWD in final settlement of all issues involved in the two Circuit Court actions and in four administrative actions then pending before the Cabinet. The December 6, 1991 agreement, filed in the Cabinet's Division of Hearings, sets forth terms under which LWD will operate pending the Cabinet's final permit decision, provides for trial burns to be conducted by LWD's incinerators, and imposes $100,000 in civil penalties against LWD "in final and complete resolution of any and all claims of liability which the Cabinet may have against LWD ...." The Cabinet's present enforcement activities with regard to LWD consist of enforcing the terms of this agreed order.

The negotiation of Defendants' agreed administrative order was arguably part of the Franklin Circuit Court litigation. Regardless, that action was concluded when the parties signed the agreed order in final settlement of the issues and the Circuit Court entered its final judgment. The fact that the terms of the settlement are still being carried out does not mean that the dispute is ongoing. The Cabinet's enforcement of the agreed order constitutes administrative action, not diligent prosecution of a court action within the meaning of § 6972(b)(1)(B). The Cabinet's activities do not preclude Plaintiffs' citizen suit.

### 2. *The Imminent Endangerment Claim*

a. In addition to alleging specific RCRA and CERCLA violations, Plaintiffs claim pursuant to 42 U.S.C. § 6972(a)(1)(B) that LWD's facilities pose an imminent and substantial endangerment to public health and the environment. LWD argues that jurisdiction over this claim is precluded by § 6972(b)(2)(B)(iv), because the EPA has issued an order under 42 U.S.C. § 6928(h) requiring LWD to perform a RCRA Facility Investigation to determine the nature and extent of any release of hazardous waste or hazardous constituents from LWD's facilities.

Paragraph (b)(2)(B)(iv) expressly precludes citizen suits brought under § 6972(a)(1)(B) only when the EPA has issued an order (or obtained a court order) under section 106 of CERCLA or 7003 of RCRA (42 U.S.C. §§ 9606, 6973), pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action. LWD contends that its RCRA Facility Investigation under § 6928(h) is equivalent in purpose and effect to CERCLA's RIFS and therefore satisfies (b)(2)(B)(iv).

When Congress explicitly enumerates exceptions to a statutory provision, a court cannot infer additional exceptions without evidence of contrary legislative intent. *See Andrus v. Glover Const. Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980). Neither the statutory structure of RCRA nor its legislative history clearly indicates that Congress intended for 6928(h) orders to preclude citizen suits brought under 6972(a)(1)(B).

The express purpose of a citizen suit under § 6972(a)(1)(B) is to remedy an imminent and substantial endangerment to health or the environment. Accordingly, § 6972(b)(2)(B) precludes such suits when the EPA has already acted to remedy an imminent and substantial endangerment under one of the statutes which grant it the authority to do so. Those statutes are 42 U.S.C. §§ 6973 and 9606. Indeed, Congress intended the citizen suit under § 6972(a)(1)(B) as a substitute for EPA action under § 6973:

> *Section 11(f) Citizens Suits.*—Section 11 confers on citizens a limited right under Section 7002 to sue to abate an imminent and substantial endangerment pursuant to the standards of liability established under Section 7003. This right can only be exercised if the Administrator (following notice of the intended litigation) fails to file an action under 7003.

H.R.Rep. No. 98–198, pt. I, at 53 (1983).

By contrast, a finding of imminent and substantial endangerment is not prerequisite to agency action under 42 U.S.C. § 6928(h). Rather, the Administrator of the EPA need merely determine that there is or has been a release of hazardous waste into the environment at an interim status facility. The legislative history of § 6928(h) reveals that Congress intended the provision to enable the EPA to impose ground-water corrective action requirements upon interim status facilities, rather than awaiting issuance of a final permit to do so. Thus, the amendment is a supplement to EPA's power to impose corrective action through permits, and orders issued pursuant to the section are generally to be used in achieving the environmental standards promulgated under section 3004. H.R.Conf.Rep. No. 98–1133, 110–112 (1984), 1984 U.S.Code Cong. and Admin.News, 5576, 5681–5683. The omission of such orders from § 6972(b)(2)(B)(iv) comports with the statutory scheme, because the EPA may act with less urgency to remedy a release when it perceives no imminent and substantial endangerment. When citizens can prove such endangerment is present, they can enlist judicial oversight pursuant to § 6972(a)(1)(B) to supplement the EPA's corrective action.

The legislative history confirms that Congress viewed § 6928(h) orders as distinct from the "imminent hazard" orders that preclude § 6972(a)(1)(B) actions:

> In authorizing the Agency to issue interim status corrective action orders were [sic] "necessary to protect human health or the environment", this provision does not alter existing law as to the scope of situations that may be addressed by EPA's "imminent hazard" actions under section 7003. EPA should continue to use that authority expansively and no implication should be drawn from this section of the bill that the Congress intends to narrow the existing section 7003.

Rep. No. 98–1133, *supra*, at 111, 1984 U.S.Code Cong. and Admin.News, at 5682. Additionally, Congress was aware of § 6928(h) when it enacted § 6972(b)(2)(B)(iv), since both provisions were added to RCRA as part of the Hazardous and Solid Waste Amendments of 1984. The court cannot rewrite the statute to add § 6928(h) orders to the list of exceptions to the jurisdictional grant of § 6972. LWD's

RCRA Facility Investigation does not preclude jurisdiction over Plaintiffs' imminent endangerment claim.

b. The Secretary joins in LWDs' argument that the RCRA Facility Investigation precludes this action, and also argues that he cannot be liable under § 6972(a)(1)(B) because he has not contributed to the "past or present handling, storage, treatment, transportation, or disposal" of hazardous waste within the meaning of that provision. These arguments are moot because Plaintiffs seek no relief against the Secretary under (a)(1)(B). All four claims against the Secretary are premised solely on violations of 42 U.S.C. § 6925 and are thus brought under § 6972(a)(1)(A). See Counts X—XIII of the Complaint.

### 3. Kentucky's Authorized Hazardous Waste Program

Pursuant to 42 U.S.C. § 6926(b), the EPA has authorized Kentucky to carry out its own hazardous waste program "in lieu of the Federal program" under RCRA. The Secretary argues that the court therefore lacks subject matter jurisdiction over Plaintiffs' RCRA claims because they do not arise under federal law. The Secretary relies chiefly on *U.S. Dept. of Energy v. Ohio*, — U.S. —, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992), which held in pertinent part that the United States had not waived its sovereign immunity from fines imposed by the State of Ohio for violations of state laws and regulations approved by the EPA to supplant the Clean Water Act, because the fines were not "penalties arising under Federal law" within the meaning of 33 U.S.C. § 1323(a). *Id.* at —, 112 S.Ct. at 1638.

■ While *U.S. Dept. of Energy* arguably supports the proposition that claims based on violations of Kentucky's hazardous waste program do not arise under federal law, the holding does not preclude this action because each count of the complaint is expressly premised on a violation of the United States Code. The RCRA counts include nine violations of 42 U.S.C. § 6925 and one each of §§ 6930 and 6972. The court has subject matter jurisdiction over these claims pursu-

ant to 28 U.S.C. § 1331 and 42 U.S.C. §§ 6972.

The Secretary argues that Plaintiffs cannot circumvent the requirement of subject matter jurisdiction merely by citing federal statutes. He contends that Plaintiffs' claims necessarily arise under Kentucky statutes because under the language of § 6926, Kentucky's program has superceded the federal program. In effect, he argues that RCRA simply cannot be violated in an "authorized state."

The language of RCRA belies the Secretary's argument. The parties agree that the Plaintiffs' "chief claim" is that LWD is operating without a final permit beyond the November 8, 1989 deadline imposed by 42 U.S.C. § 6925(c)(2)(A)(ii). 42 U.S.C. § 6925(c)(2)(C) specifies that this deadline "shall also apply in the case of any State which is administering an authorized hazardous waste program under section 3006 [42 USCS § 6926]." Other RCRA provisions and its legislative history also show that Congress contemplated that the Act could be violated and enforced in authorized states:

Upon a determination by the Administrator (or by a State, in the case of a State having an authorized hazardous waste program under section 3006 [42 U.S.C. § 6926] of noncompliance by a facility having a permit under this title [42 U.S.C. § 6901 et seq.] *with the requirements of this section or section 3004* [42 U.S.C. § 6924], the Administrator (or State, in the case of a State having an authorized hazardous waste program under section 3006 [42 U.S.C. § 6926] shall revoke such permit.

42 U.S.C. § 6925(d) (emphasis added).

In the case of a violation of any *requirement of this subtitle* [42 U.S.C. §§ 6921 et seq.] where such violation occurs in a State which is authorized to carry out a hazardous waste program under section 3006 [42 U.S.C. § 6926], the Administrator shall give notice to the State in which such violation has occurred prior to issuing an order or commencing a civil action under this section.

42 U.S.C. § 6928(a)(2) (emphasis added).

Although the Administrator is required to give notice of *violations of this title* to the

states with authorized state hazardous waste programs the Administrator is not prohibited from acting in those cases where the state fails to act, or from withdrawing approval of the state hazardous waste plan and implementing the federal hazardous waste program pursuant to title III of this act ...

Further, the Administrator, after giving the appropriate notice to a state that is authorized to implement the state hazardous waste program, that *violations of this Act* are occurring and the state failing to take action against such violations, is authorized to take appropriate action against those persons in such state not in compliance with the hazardous waste title.

H.R.Rep. No. 94–1491, pt. I, at 31–32 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6238, 6269–70 (emphasis added).

RCRA does not define what "Federal program under this subtitle" is to be supplanted by an authorized state program within the meaning of § 6926(b). *Wyckoff Co. v. E.P.A.,* 796 F.2d 1197, 1200 (9th Cir.1986). The Secretary asks the court to define the term as including the entire Act. The *Wyckoff* court, relying chiefly on § 6928(a), rejected a similar interpretation in holding that the EPA may regulate hazardous waste activities even in an authorized state. *Id.* at 1199, 1200 (rejecting the argument that the term "program" in section 3006 encompasses "the sum of the hazardous waste management authorities and activities described anywhere in subtitle C" of the Act).

 RCRA's legislative history indicates that the federal program referred to in § 6926(b) is not the Act itself, but the regulatory program implemented by the EPA to enforce the Act: "This section [§ 6926] develops a structure under which states can plan and implement a state hazardous waste program, in lieu of the federal program *which is developed and implemented by the Administrator.*" H.R.Rep. 94–1491, at 29, 1976 U.S.C.C.A.N. at 6267 (1976). The Administrator's program is codified beginning at 40 C.F.R. § 270.1, which states: "These permit regulations establish provisions for the Hazardous Waste Permit Program under Subtitle C of the Solid Waste Disposal Act,

as amended by the Resource Conservation and Recovery Act of 1976, as amended (RCRA) ..." Kentucky's program supplants this regulatory Permit Program, not the statutory provisions of RCRA. Those provisions still apply in Kentucky, and claims of their violation necessarily arise under federal law.

### 4. *Eleventh Amendment Immunity*

RCRA and CERCLA permit citizen suits against governmental instrumentalities or agencies only to the extent allowed by the 11th Amendment to the Constitution. 42 U.S.C. §§ 6972(a) and 9659(a). The Secretary argues that Plaintiffs' claims against him in his official capacity are in effect claims against the Commonwealth of Kentucky which are barred by the Eleventh Amendment.

 A suit for damages against a state official in his official capacity is in effect a suit against the state itself, and is barred by the 11th Amendment. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). However, Plaintiffs seek only declaratory and injunctive relief against the Secretary for claims grounded in federal law. Such an action is not treated as a suit against the state and is therefore not barred by the Eleventh Amendment. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985); *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

In conclusion, the court has subject matter jurisdiction over this lawsuit.

### ABSTENTION

Defendants alternatively contend that several judicial doctrines require the court to abstain from exercising its jurisdiction over this action.

### 1. *Burford Abstention*

 a. The *Burford* doctrine states that where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the

proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. *New Orleans Public Serv. v. Council of New Orleans,* 491 U.S. 350, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). When no state claims are at issue, and the federal claims at issue are not "in any way entangled in a skein of state law that must be untangled before the federal case can proceed," the doctrine does not apply. *Id.* at 361, 109 S.Ct. at 2514.

In *Ada–Cascade Watch Co., Inc. v. Cascade Resource Recovery, Inc.,* 720 F.2d 897 (6th Cir.1983), this circuit abstained under the *Burford* doctrine from deciding whether a hazardous waste facility was "in existence" on November 19, 1980 so as to entitle it to "interim status" under 42 U.S.C. § 6925(e). The court found that to resolve this federal question it would have to determine whether the facility had obtained all the permits re-quired under Michigan's environmental statutes and regulations—a question of state law. *Id.* at 901. *Burford* prohibited the court from making that determination. *Id.* at 905, 906.

Count VIII of Plaintiffs' complaint alleges that LWD's incineration unit No. 3 is not entitled to interim status under 42 U.S.C. § 6925(e) because it is a "reconstructed" fa-cility and not an "existing" facility as defined by federal and state regulation. The court would have to look to state regulations to resolve this claim because Kentucky's autho-rized program operates in lieu of federal regulations. *See* 401 KAR 38:020 § 3(5). LWD correctly asserts that *Ada–Cascade* prohibits the court from doing so.

However, Plaintiffs' complaint alleges thir-teen violations of federal law, and Defendants do not address to what extent the remaining twelve claims will require consideration of state law issues. Plaintiffs merely argue that their claim that Defendants are in viola-tion of the federal deadline for a final permit

decision, which is central to their cause of action, does not require analysis of state law. Although the court can determine when the events relevant to this claim occurred with-out reference to state law, it may have to delve into state administrative matters to determine the applicability of the deadline and the consequences of its violation, which are not immediately clear from the statute. Like Defendants, Plaintiffs do not discuss their other claims in this context.

 Under these circumstances the court will defer its decision as to whether *Burford* requires abstention until it has the opportu-nity to consider each remaining count on its merits, after further briefing by the parties. The court will approach the question under the guidance of *New Orleans,* which teaches that some inquiry into state regulatory mat-ters is acceptable if it does not demand sig-nificant familiarity with, and will not disrupt state resolution of, distinctively local regula-tory facts or policies. *Id.,* 491 U.S. at 363–64, 109 S.Ct. at 2515.

b. LWD contends that under *Ada–Cas-cade, Burford* abstention applies not only when state law issues are present but when resolution of federal questions would inter-fere with a complex state regulatory scheme. Kentucky's hazardous waste program un-doubtedly constitutes such a scheme, with review of administrative decisions consolidat-ed in the Franklin Circuit Court pursuant to K.R.S. § 224.10–470. LWD insists that be-cause the federal issues in this action are pending before the Cabinet, federal review will disrupt the state's efforts to establish a coherent environmental policy and interfere with its administrative scheme.

To the extent *Ada–Cascade* can be read so broadly, it has been overruled by *New Or-leans.* In that case, the New Orleans City Council denied a rate increase sufficient to fully reimburse a utility retailer for costs allocated to the retailer by the Federal Ener-gy Regulatory Commission for construction and operation of a nuclear reactor. The retailer appealed the ratemaking order in state court but simultaneously challenged it in federal court, arguing that federal case law prohibits a state from differing from FERC's allocations. The Fifth Circuit held

that *Burford* required abstention in spite of the absence of a state law claim, because the "motivating force behind *Burford* abstention is ... a reluctance to intrude into state proceedings where there exists a complex state regulatory system." *New Orleans* at 361, 109 S.Ct. at 2514. The Supreme Court disposed of this argument as follows:

> While *Burford* is concerned with protecting complex state administrative processes from undue federal interference, it does not require abstention whenever there exists such a process, or even in all cases where there is a "potential for conflict" with state regulatory law or policy. *Colorado River Water Conservation Dist.* [*v. United States* ], 424 U.S. [800], at 815–816, 96 S.Ct. [1236], at 1245 [47 L.Ed.2d 483 (1976) ]. Here, NOPSI's primary claim is that the Council is prohibited by federal law from refusing to provide reimbursement for FERC-allocated wholesale costs. Unlike a claim that a state agency has misapplied its lawful authority or has failed to take into consideration or properly weigh relevant state-law factors, federal adjudication of this sort of pre-emption claim would not disrupt the State's attempt to ensure uniformity in the treatment of an "essentially local problem." *Alabama Pub. Serv. Comm'n* [*v. Southern Ry. Co.* ], *supra,* 341 U.S. [341], at 347, 71 S.Ct. [762], at 767 [95 L.Ed. 1002 (1951) ].

*Id.,* 491 U.S. at 360–64, 109 S.Ct. at 2514, 2515. The Court also cited *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978), for the proposition that abstention is not required merely because resolution of a federal question may result in the overturning of a state policy. *Id.,* 491 U.S. at 363, 109 S.Ct. at 2515.

Under the teaching of *New Orleans,* the mere fact that this court's resolution of Plaintiffs' claims may interfere with Kentucky's resolution of the same issues cannot justify *Burford* abstention. Contrary to LWD's argument, the court cannot abstain under this doctrine unless it determines that the remaining claims, like Count VIII, require significant analysis of state law.

## 2. *Younger and Colorado River Abstention, Ripeness, and Primary Jurisdiction*

Before bringing this lawsuit, Plaintiffs initiated various administrative actions against Defendants raising the same issues involved here. Because those actions are still pending before the Cabinet's Office of Administrative Hearings, Defendants contend that the court must dismiss this action under the *Younger* and *Colorado River* abstention doctrines, and under the related doctrines of ripeness and primary jurisdiction.

Assuming for the sake of argument that these doctrines would ordinarily preclude jurisdiction, they do not apply here because Congress has thoroughly and precisely addressed the effect of state administrative proceedings on federal courts' jurisdiction over RCRA citizen suits. As explained above, Congress chose to preclude jurisdiction over citizen suits for RCRA violations (i.e., suits brought pursuant to § 6972(a)(1)(A)) only when the plaintiff has failed to properly notify the EPA Administrator, the appropriate State, and the alleged violator, or when the Administrator or State has commenced and is diligently prosecuting a court action. 42 U.S.C. § 6972(b)(1). To hold that pending administrative proceedings constitute an additional circumstance precluding jurisdiction would be to blatantly defy the "undisputed constitutional principle that Congress, and not the judiciary, defines the scope of federal jurisdiction within the constitutionally permissible bounds." *New Orleans* at 359, 109 S.Ct. at 2513, *citing Kline v. Burke Construction Co.,* 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922). *Sierra Club v. U.S. Dept. of Energy,* 734 F.Supp. 946, 951 (D.Colo.1990) (delaying RCRA citizen suit pending outcome of state administrative negotiations would defeat Congress' intent to allow citizen enforcement whenever there is no diligent prosecution in court); *U.S. EPA v. Environmental Waste Control, Inc.,* 710 F.Supp. 1172, 1194 (N.D.Ind.1989), *aff'd,* 917 F.2d 327 (7th Cir.1990), *cert. denied,* 499 U.S. 975, 111 S.Ct. 1621, 113 L.Ed.2d 719 (1991) (use of primary jurisdiction doctrine to bar federal citizen suit would thwart legislative intent behind RCRA and CERCLA); *Middlesex Cty. Bd. of Chosen*

*Freeholders v. N.J.,* 645 F.Supp. 715, 720 (D.N.J.1986) (RCRA's legislative scheme contemplated simultaneous state administrative and federal citizen suit proceedings relating to a waste disposal facility); *See Student Pub. Int. Res. Group v. P.D. Oil & Chemical,* 627 F.Supp. 1074 (D.N.J.1986) (abstention doctrine did not apply where Congress did not intend for state governmental action to preclude citizen suits under Federal Water Pollution Control Act scheme).

### 3. *Full Faith and Credit*

Finally, LWD contends that the Franklin Circuit Court, in remanding LWD's action against the Cabinet, ruled that LWD is a permitted interim facility. LWD insists that the full Faith and Credit Act, 28 U.S.C. § 1738 requires the court to give res judicata effect to this judgment, and that the court must therefore abstain from deciding Plaintiffs' claims to the contrary.

▮ The effect of the Franklin Circuit Court's judgment upon this court is controlled by Kentucky law. *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). In Kentucky the doctrine of res judicata is applicable when there is identity of parties, identity of causes of action and the first action is decided on its merits. *George v. United Kentucky Bank, Inc.,* 753 F.2d 50 (6th Cir. 1985), *cert. denied,* 471 U.S. 1018, 105 S.Ct. 2024, 85 L.Ed.2d 306, and 474 U.S. 821, 106 S.Ct. 70, 88 L.Ed.2d 58. Defendants acknowledge that Plaintiffs were not parties to Franklin Circuit Court action, but argue that they are nevertheless bound by the judgment because (1) they are in privity with the Cabinet with regard to enforcing LWD's legal obligations, and (2) they could have intervened in the Circuit Court action but for their own procedural violations.

▮ Defendants' first argument fails because to establish privity for res judicata purposes, Kentucky law requires absolute identity of legal interest, not merely an interest in disproving the same facts. *BTC Leasing, Inc. v. Martin,* 685 S.W.2d 191 (Ky.App. 1985). Kentucky courts have never addressed the second argument, but the United States Supreme Court has held that because

the procedural rules allowing intervention are permissive rather than mandatory, "a party seeking a judgment binding on another cannot obligate that person to intervene; he must be joined." *Martin v. Wilks,* 490 U.S. 755, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989).

The Franklin Circuit Court judgment cannot be given res judicata effect because Plaintiffs were not parties to that action. It is therefore unnecessary.to determine whether that court reached the merits of any claim brought before this court.

## CONCLUSION

The court must abstain under *Burford* from considering Count VIII of the complaint, but will exercise its jurisdiction over the remaining claims to the extent that their resolution does not require in-depth analysis of state law.

Defendants remind the court of the fate of the Michigan district court which expended great judicial resources in deciding the merits of *Ada–Cascade,* only to be reversed by the circuit court on grounds that it should have abstained under *Burford.* Heeding this warning, the court finds that this opinion and accompanying order involve controlling questions of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from the order may materially advance the ultimate termination of this litigation. The court will therefore stay further proceedings in this action upon timely application for an appeal pursuant to 28 U.S.C. § 1292.

An appropriate order accompanies this memorandum opinion.

## ORDER

For the reasons stated in the accompanying memorandum opinion, the defendants' motions to dismiss are GRANTED with regard to Count VIII of the complaint, and that count is hereby DISMISSED with prejudice. The motions are DENIED with regard to all other counts.