USCA1 Opinion

 

 February 8, 1993 UNITED STATES COURT OF APPEALS For The First Circuit ____________________ No. 92-1164 DIVERSIFIED FOODS, INC., et al., Plaintiffs-Appellants, v. THE FIRST NATIONAL BANK OF BOSTON, et al., Defendants-Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Torruella and Boudin, Circuit Judges, ______________ and Keeton,* District Judge. ______________ ____________________ Richard E. Poulos with whom John S. Campbell, Poulos, Campbell & _________________ _________________ ___________________ Zendzian, P.A., Daniel G. Lilley and John A. McArdle were on brief for _____________ ________________ _______________ appellants. William J. Kayatta, Jr., with whom Peter W. Culley, Catherine R. ______________________ _______________ ____________ Connors and Pierce, Atwood, Scribner, Allen, Smith & Lancaster were on _______ __________________________________________________ brief for appellees. ____________________ February 8, 1993 ____________________ __________________ * of the District of Massachusetts, sitting by designation. BOUDIN, Circuit Judge. In this case the district court _____________ dismissed a suit brought under the Bank Holding Company Act, 12 U.S.C. 1972, on the ground that it was barred by res ___ judicata. The prior litigation, held to bar the new federal ________ action, was a state-court suit brought by the same plaintiffs against the same defendants and decided in favor of the latter. The disappointed plaintiffs now appeal, urging on several grounds that res judicata does not properly apply. _____________ In full agreement with the district court, we affirm its decision. The procedural history of the two cases is complex and intertwined but a brief summary will suffice at the outset. Diversified Foods, Inc., and its operating subsidiary New England Sales, Inc. (collectively, "the borrowers"), were engaged in a specialized form of wholesale distribution of goods. In financing their activities, they entered into various borrowing arrangements with First National Bank of Boston and its Maine subsidiary Casco Northern Bank (collectively, "the banks"). The arrangements, at least in the borrowers' view, contained terms restricting their ability to obtain alternative sources of financing. During 1988, the borrowers first sought to expand their business and then suffered large losses. They attribute this reversal of fortune to the failure of the banks to provide adequate credit under the borrowing arrangements. Claiming -2- -2- multimillion dollar damages, the borrowers on August 21, 1989, brought suit against the banks in Maine Superior Court, asserting various state-law tort and contract claims. The complaint, as later amended in 1990, included the charge that the banks violated an implied covenant of good faith by imposing "unreasonable restrictions so as to prevent the [borrowers] from obtaining alternative financing." Discovery in the state case proceeded during 1989 and 1990. On September 14, 1990, while the state case was proceeding, the borrowers brought the present action against the banks based on the anti-tying provisions of the Bank Holding Company Act, 12 U.S.C. 1972(1). The new federal claims were based, it appears, on information obtained through discovery in the state case. The borrowers say that the new claims were asserted in a separate action in a different court because at that time the borrowers held the view (contrary to two circuit decisions) that federal courts have exclusive jurisdiction over claims under section 1972.1 ____________________ 1Two weeks before filing the federal complaint, the borrowers moved to amend their state complaint to charge that the banks had breached their duty of good faith by "unreasonable, illegal, and anticompetitive" restrictions on alternative financing. Shortly after the federal complaint was filed, the banks opposed the state amendment. When the borrowers responded that the federal claims were not being asserted in the state case, the state court allowed the amendment, striking the words "illegal" and "anticompetitive." -3- -3- When the banks answered the federal complaint on October 24, 1990, they included as a defense the assertion that the borrowers "have improperly split their causes of action, having previously filed in another court another complaint arising out of the same transaction or series of transactions." Thereafter, the banks resisted the borrowers' efforts in January 1991 to introduce the state claims into the federal action by amendment of the federal complaint or to delay the state proceedings. The banks did agree to have discovery in either case treated as if taken in both. On April 18, 1991, the Maine Superior Court granted summary judgment in favor of the banks, a decision later affirmed on appeal. Diversified Foods, Inc. v. First Nat'l ______________________ ___________ Bank, 605 A.2d 609 (Me. 1992). The banks then moved for ____ summary judgment in the federal action on grounds of res ___ judicata, and the district court granted the motion on ________ January 9, 1992. A belated attempt by the borrowers to reopen the state case to add the federal claims was rejected by the state court, and this action was also affirmed on appeal. Id. The borrowers then pursued this appeal in the __ federal case. In this court the borrowers first argue that federal courts have exclusive jurisdiction over claims under the Bank Holding Company Act's anti-tying provisions. Therefore, they argue, res judicata cannot properly derive from the state ____________ -4- -4- court judgment because they could not have included the federal claims in their state case. We need not decide whether the conclusion would follow if the premise were sound, for the premise is mistaken. We follow two circuits and several other courts that uniformly hold that state tribunals have concurrent jurisdiction over section 1972 claims. Cuervo Resources, Inc. v. Claydesta Nat'l Bank, 876 ______________________ ____________________ F.2d 436 (5th Cir. 1989); Lane v. Central Bank, N.A., 756 ____ __________________ F.2d 814 (11th Cir. 1985).2 The Bank Holding Company Act provides that anyone injured by a violation of section 1972 may sue "in any district court of the United States," admittedly making no reference to state courts. 12 U.S.C. 1975. But it is now settled that there is a presumption in favor of concurrent jurisdiction, so that state courts may entertain federal civil claims as a matter of course "absent provision by Congress to the contrary or disabling incompatibility" between the federal claim and state court jurisdiction. Gulf ____ Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 477-78 ____________ _______________ (1981). Here there is no explicit bar to state-court jurisdiction and the subject matter is hardly beyond the ____________________ 2Several state courts have reached the same conclusion. See United Central Bank, N.A. v. Kruse, 439 N.W.2d 849 (Iowa ___ ________________________ _____ 1989); Waite v. Banctexas-Houston, N.A., 792 S.W.2d 538 (Tex. _______________________________ Ct. App. 1990). -5- -5- competence of state courts, which routinely consider claims under their own antitrust laws. Of course, the resemblance to antitrust law cuts both ways, providing the borrowers' best argument for exclusive federal jurisdiction. Section 1972 is a blunter version of section 3 of the Clayton Act, 15 U.S.C. 14, and with qualifications courts use Clayton Act precedents in applying section 1972. E.g., Swerdloff v. Miami Nat'l Bank, 584 F.2d ___ _________ ________________ 54, 58-59 (5th Cir. 1978). In empowering federal courts to hear Clayton Act cases, Congress made no reference to state- court jurisdiction, see 15 U.S.C. 15, and it is well ___ settled (by judicial construction) that federal antitrust claims may be asserted only in federal court. Blumenstock ___________ Bros. Advertising Agency v. Curtis Pub. Co., 252 U.S. 436, _________________________ _______________ 440 (1920). The borrowers urge that the same gloss be applied to the Bank Holding Company Act. Exclusive federal-court jurisdiction over antitrust claims, although a firmly rooted rule, is the product of reasoning that the Supreme Court no longer applies in new matters. Like baseball's judicial "exemption" from the antitrust laws, see Flood v. Kuhn, 407 U.S. 258, 283-84 ___ _____ ____ (1972), the result persists but is not extended. This is the clear message of Tafflin v. Levitt, 493 U.S. 455, 459-60 _______ ______ (1990), where the Supreme Court affirmed the state courts' concurrent jurisdiction over civil RICO claims and rejected -6- -6- the same Clayton Act analogy offered here. Indeed, the RICO statute uses jurisdictional language quite similar to the Bank Holding Company Act, compare 18 U.S.C. 1964(c) with 12 _______ ____ U.S.C. 1975, and was passed by the same Congress in the same session. Tafflin offers the coup de grace to the _______ ______________ borrowers' argument for exclusive jurisdiction.3 Once that issue is removed, the application of res ___ judicata is straightforward in the present case. The branch ________ of that doctrine of concern here, known for many years as merger (if the plaintiff had won the first case) and bar (if the plaintiff had lost), has lately been rechristened "claim preclusion" in the modern functional style. See Roy v. ___ ___ Jasper Corp., 666 F.2d 714, 717 (1st Cir. 1981). More ____________ important, the doctrine has evolved subtly, although not uniformly in all jurisdictions, to employ a functional "same transaction" test, as an overlay to the traditional inquiry whether the "cause of action" in the two cases is the same. Maine, whose earlier judgment is invoked here as res ___ judicata, employs this test, which is therefore binding on ________ ____________________ 3We give little weight to occasional references by Congress, in the legislative history of section 1972, to suits in "federal" courts. See, e.g., 2 One-Bank Holding ___ ___ ________________ Company Legislation of 1970: Hearings Before the Senate _____________________________ ____________________________ Comm. on Banking and Currency, 91st. Cong., 2d Sess. 966 _______________________________ (1970) (statement of Sen. Bennett) (referring to "the process of suit through the Federal courts . . ."). These references, if any intent is attributable to them, appear to reflect the natural assumption that Bank Holding Company Act claims would usually be litigated in federal forums. -7- -7- us. See Migra v. Warren City School Dist. Bd. of Educ., 465 ___ _____ _____________________________________ U.S. 75, 85 (1984). In Currier v. Cyr, 570 A.2d 1205 (Me. 1990), the Maine _______ ___ Supreme Judicial Court summarized the rule it follows in deciding whether new claims are barred because they were or "might have been" litigated in the prior case: Maine has accepted what is known as a "transactional test" of cause of action, which defines "the measure of a cause of action as the aggregate of connected operative facts that can be handled together conveniently for purposes of trial." Id. at 1208 (quoting Gurski v. Culpovich, 540 A.2d 764, 766 __ ______ _________ (Me. 1988)). Accordingly, so long as the parties are the same in both cases and a final judgment was entered in the prior action, "a subsequent suit that arises out of the same ________ operative facts shall be barred even though the second suit ________________ relies upon a legal theory not advanced in the first case, seeks different relief than that sought in the first case, and involves [different] evidence . . . ." Id. (emphasis __ added). In the present case the borrowers' federal claims under section 1972 unquestionably arise out of "the same operative facts" as the state claims earlier asserted by the borrowers. They themselves, in an unsuccessful attempt to add the state claims to the federal case based on pendant jurisdiction, told the district court that "[t]he facts forming the basis -8- -8- for the state claims are the same facts which form the basis of the pending [federal] action . . . ." A comparison of the two complaints shows that the factual allegations substantially overlap. Further, the central tying allegation in the federal complaint--that the banks restricted the borrowers' access to alternative sources of credit--was one of the express claims in the state action. In this court, the borrowers make only a half-hearted effort to distinguish the two complaints under the Maine transactions test for res judicata, and we think the point ____________ needs no further discussion. The borrowers' central arguments in resisting res judicata, exclusive jurisdiction ____________ aside, are variants on a single theme. They argue in substance that the banks themselves strove to keep the two actions separate, resisted the assertion of state claims in the federal case and vice versa, and now use the judgment in the suit first decided to prevent litigation of the other on the merits. This effort to resist consolidation, say the borrowers, should estop the banks from invoking res judicata ____________ or should be treated as a waiver of the defense. We accept arguendo the borrowers' version of events, ________ although it is unclear whether the banks followed a conscious strategy or merely opposed seriatim the successive demands of an opponent. But in either event we do not see how the gravamen of the charge--the banks' resistance to -9- -9- consolidation of the federal and state claims--gives rise to an estoppel of the banks. The banks are not alleged to have said anything untrue. Their position throughout has been consistent. There is not even a valid charge of concealment or surprise: the banks' answer in the federal case gave fair warning of the risk of res judicata by asserting a claim ____________ splitting defense, expressly referring to the borrowers' state suit "arising out of the same transaction or series of transactions." As for waiver, it may be assumed that Maine, consistent with general law on the subject, would disallow res judicata ____________ if the "parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Calderon Rosado v. General Electric _______________ _________________ Circuit Breakers, Inc., 805 F.2d 1085, 1087 (1st Cir. 1986) ______________________ (quoting Restatement (Second) of Judgments 26(1)(a)).4 ___________________________________ Indeed, in Thompson v. Gaudette, 148 Me. 288, 92 A.2d 342 ________ ________ (1952), the Maine Supreme Judicial Court said that the rule against splitting a cause of action will be waived unless the defendant asserts it "at the earliest opportunity." 92 A.2d at 348 (quoting Mayfield v. Kovac, 41 Ohio App. 310, 181 N.E. ________ _____ ____________________ 4In Calderon Rosado this court rejected on waiver ________________ grounds a res judicata defense in a federal action. The _____________ defendant had earlier agreed to the plaintiff's voluntary dismissal "with prejudice" of a wrongful discharge claim under Puerto Rican law brought in a local court, "seemingly acceding to plaintiff's desire to litigate in federal court" under a federal statute. 805 F.2d at 1086. -10- -10- 28, 30 (1931)). In our case, the banks at the outset pleaded claim-splitting in their answer and maintained that position throughout the case. Courts could, we suppose, disallow the claim preclusion defense wherever two suits are brought and the defendant thereafter resists their consolidation. But when a plaintiff has chosen to bring two lawsuits in the same time frame relating to the same operative facts, it is hard to see why the defendant should not be able to resist consolidation on proper grounds, such as undue delay. If the resistance is unjustified, the plaintiff may normally litigate that issue within the lawsuit. In fact, the borrowers here did seek to add the federal claims to the state action; but they did so only after summary judgment was granted on the state claims. _____ Not surprisingly, the Maine Supreme Judicial Court said that this effort came too late. Diversified Foods, Inc., 605 A.2d ______________________ at 616.5 Finally, the borrowers suggest that, estoppel and waiver issues to one side, it would be inequitable to permit the res ___ judicata defense. They argue that their decision to bring a ________ separate federal suit, instead of adding the federal claims ____________________ 5The borrowers were only slightly more diligent in seeking to add the state claims to the federal case. In late January 1991, they moved to amend the federal complaint to assert the state claims and to stay the state action. This occurred, however, after the close of state discovery and on the eve of the banks' deadline for filing summary judgment motions. -11- -11- to the state case, was based on a good faith belief that exclusive federal-court jurisdiction prevented that course. Res judicata is a judge-made doctrine resting on ______________ considerations of policy, and doubtless there is room for equitable adjustments. See generally 18 Charles A. Wright, ___ _________ Arthur R. Miller & Edward H. Cooper, Federal Practice and _____________________ Procedure 4415 (1981). But in this case the mistaken _________ belief in exclusive federal jurisdiction was formed in the face of two circuit decisions to the contrary. Thus, the case for an equitable departure from res ___ judicata is very weak. True, the banks played an aggressive ________ hand, but litigation is inherently aggressive. Further, the borrowers created their own dilemma by bringing the two actions separately, ignoring the concurrent-jurisdiction precedents directly in point. Then, in the teeth of the warning furnished by the banks' claim splitting defense, the borrowers failed to assert the federal claims in the state case until after that case had been lost. Like the Maine Supreme Judicial Court, we see no equitable basis for resurrecting claims that the borrowers themselves allowed to expire. Affirmed. ________ -12- -12-