Donald P. DAVIS, et al., Plaintiffs,

v.

SUN OIL COMPANY, aka Sun Refining
and Marketing Company,
Defendant.

No. C–3–93–408.

United States District Court,
S.D. Ohio,
Western Division.

March 20, 1996.

Joseph Philip Moore, Sunderland &
Moore, Vandalia, OH, Albert Mark Segreti,
Jr., Haffey & Segreti, Dayton, OH, for plain-
tiffs.

Larry Allen Smith, Dayton, OH, Michael
Robert Blumenthal, David S. Hoffmann,

McMahon, DeGulis & Hoffmann, Cleveland, OH, for defendant.

## DECISION AND ENTRY OVERRULING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT (DOC. # 21)

RICE, Chief Judge.

This case arises from circumstances surrounding the alleged contamination of Plaintiffs' property, located in Dayton, Ohio, by the previous owner of the property, Defendant Sun Oil Company, aka Sun Refining and Marketing Company ("Sun"), by means of underground gasoline pipelines which were left on the premises when the property was sold. Plaintiff Donald Davis and Plaintiff Maxine Davis ("Plaintiffs") bring this action under the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), as codified at 42 U.S.C. § 6972(a)(1)(B), which provides as follows:

> Except as provided ... any person may commence a civil action on his own behalf—against any person ... including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste *which may present an imminent and substantial endangerment to health or the environment* ...

42 U.S.C. § 6972(a)(1)(B) (emphasis added).

This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331. In addition, this Court has jurisdiction over this action pursuant to 42 U.S.C. § 6972(a), which provides that any action brought under § 6972(a)(1) "shall be brought in the district court for the district in which the alleged violation occurred or the alleged endangerment may occur."

Prior to bringing this action, Plaintiffs instituted a state court action in the Montgomery County Court of Common Pleas against Defendant Sun, alleging fraud, breach of contract, and nuisance. On March 28, 1995, Judge Kilpatrick, of the Montgomery County Court of Common Pleas, held that Defendant Sun was liable to Plaintiffs on their claims of fraud and breach of contract (Decision and Order, Doc. # 21, Exh. 5).[1] Based in part on this decision, Plaintiffs have filed a Motion for Summary Judgment (Doc. # 21) on their claim under the RCRA. For the reasons given below, this motion is hereby overruled.

### A. Summary Judgment Standard

Before focusing on the merits of the motion, the Court will set forth the relative burdens of the parties once a motion for summary judgment is made. Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

> Of course, [the moving party] always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Id.* at 323, 106 S.Ct. at 2553. *See also Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial." Quoting *Gutierrez v. Lynch,* 826 F.2d 1534, 1536 (6th Cir.1987) ). The burden then shifts to the non-moving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (quoting Fed.R.Civ.P.

---

1. In its Memorandum in Opposition (Doc. # 24), Defendant noted that it was appealing this decision to the Ohio Court of Appeals. This Court assumes that had a decision been rendered regarding this appeal, which might have impacted upon the motion addressed herein, said decision would have been provided to this Court.

56(e)). Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50). *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir.1989).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the non-moving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are ... 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all *reasonable* inferences in the favor of that party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513–14 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), *cert. denied*, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). *See also, L.S. Heath & Son, Inc. v. AT & T Information Systems, Inc.*, 9 F.3d 561 (7th Cir.1993); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n. 7 (5th Cir.), *cert. denied*, 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

## B. Collateral Estoppel Argument [2]

As noted above, Plaintiffs successfully sued Defendant Sun in state court, for breach of contract and fraud. Based in part on this state court decision, Plaintiffs have now moved for summary judgment on their RCRA claim in this Court, arguing that this Court is bound by the state court's decision by the doctrine of collateral estoppel. This doctrine "bars relitigation of issues actually litigated and determined in an earlier action and necessary to the judgment." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 561 (6th Cir.1995); *accord Goodson v. McDonough Power Equip., Inc.*, 2 Ohio St.3d 193, 443 N.E.2d 978 (Ohio 1983) (collateral estoppel is "preclusion of the relitigation in a second action of an issue or issues that have been

**2.** In addition to arguing that the doctrine of collateral estoppel, also known as issue preclusion, is relevant to this case, Plaintiffs have asserted that the doctrine of *res judicata*, or claim preclusion, is applicable (Doc. # 21, p. 3). Since, however, none of the parties have made arguments relating to claim preclusion, this Court will treat Plaintiffs' Motion as being based solely on the doctrine of collateral estoppel.

actually and necessarily litigated and determined in a prior action").

In their Motion, Plaintiffs specifically argue that the Defendant is collaterally estopped from litigating the issue of whether the contamination of the Plaintiffs' property "may present an imminent and substantial endangerment to health or the environment," which is a necessary element of this action. 42 U.S.C. § 6972(a)(1)(B). In order to determine whether this issue was "actually litigated and determined, and necessary to the judgment" in the state court action, this Court turns to that decision.

### 1. State Court Decision

Judge Kilpatrick, of the Montgomery County Court of Common Pleas, set forth the following facts in his decision (Decision and Order, Doc. # 21, Exh. 5). In 1985, Defendant Sun sold property to Plaintiffs on which it had operated a gas station for twenty years. At the time of the sale, Defendant Sun removed four 6,000 gallon underground storage tanks from the property, but failed to remove the underground piping which had connected the tanks to the pump islands. Plaintiffs did not find any evidence of this piping because Defendant Sun covered the ground with dirt after removing the tanks. "Gasoline remained in the piping, causing it to eventually be released into the soil." (*Id.,* p. 2).

In 1989, Plaintiffs contracted to sell the property to United Dairy Farmers ("UDF"), but was unable to complete the sale due to findings by an environmental company hired by UDF, H.C. Nutting Company ("Nutting"), that "showed high levels of contamination. . . . [which] indicated high levels of benzene, toulene, ethyl benzene, and xylenes (together called BTEX), lead, and PHC. The PHC levels exceeded the state's guidelines." (*Id.,* p. 3).

Following this report, Defendant and Plaintiffs entered into an understanding that Defendant would remove the contamination from the soil. Defendant subsequently hired Westinghouse to clean up the property, beginning in February, 1990, but instructed Westinghouse to clean up only one of the three contaminated areas. Although West-

inghouse did not remove the underground piping, it did find heavy gasoline contamination in the ground water, and observed gasoline in the piping lines and in the ground around the piping. After Westinghouse had completed its work, Nutting re-inspected the property and found "significant contamination of both the soil and groundwater." Plaintiffs then removed the piping and disposed of a large quantity of contaminated soil, but could not complete the clean-up due to excessive costs. The soil was tested in November, 1992, and found to contain high levels of BTEX and PHC from the gasoline still underground. Two of Plaintiffs' experts testified that the contamination of the property was the result of the piping.

Based upon these facts, Judge Kilpatrick adopted the Referee's Report, which found that Defendant Sun had breached its contract with the Plaintiffs to clean up the property, and found that Defendant Sun was liable for fraud, due to its concealment of the underground piping when the property was sold. Although the court declined to award lost profits, it ordered specific performance as a remedy, and awarded punitive damages.

### 2. Effect of State Court Decision on this Action

In order to recover on their claim under the RCRA, Plaintiffs must show that Defendant Sun "has contributed ... to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste *which may present an imminent and substantial endangerment to health or the environment . . . .*" 42 U.S.C. § 6972(a)(1)(B).

In their Motion, Plaintiffs argue that the Defendant is precluded from litigating this issue in this Court under the doctrine of collateral estoppel, because the state court's finding that Defendant Sun was responsible for high levels of benzene on the property "necessarily determines that there may be an imminent and substantial endangerment." (Doc. # 21). That is, "the finding of high levels of gasoline contamination necessarily means there may be an imminent and substantial endangerment based on the inherent

characteristics of gasoline." (*Id.*). In response, Defendant argues that the state court never decided this issue (Doc. # 24). Plaintiffs reply by arguing that "the factual issue is the same; the legal implications are all that is different." (Doc. # 25).

■ Plaintiffs' argument is not persuasive. As discussed, the doctrine of collateral estoppel "bars relitigation of issues *actually litigated and determined* in an earlier action and necessary to the judgment." *Kane*, 71 F.3d at 561 (emphasis added). In the case *sub judice*, the critical issue is *not* whether the property is contaminated; instead, it is whether the contamination of the property "may present an imminent and substantial endangerment to health or the environment." This issue was *never determined* by the state court: although the state court did find the *existence* of contamination, it made no finding as to the *extent* of this contamination, nor as to the *effect* of the contamination on health or the environment. Therefore, because the state court did *not* determine whether the levels and nature of the contamination on the Plaintiffs' property "may present an imminent and substantial endangerment to health or the environment," Defendant Sun is not estopped from litigating this issue. Accordingly, Plaintiffs' Motion for Summary Judgment cannot succeed on this basis.

## C. Existence of a Genuine Issue of Material Fact

Next, this Court must determine whether there exists a genuine issue of material fact as to whether the contamination on Plaintiffs' property "may present an imminent and substantial endangerment to health or the environment." Plaintiffs argue that there exists no genuine issue of material fact on this issue, for two reasons: (1) the United States Environmental Protection Agency ("EPA") has determined that benzene is dangerous at even low levels; and (2) Robert Kohnen, Plaintiff's expert, has testified that "benzene is a human carcinogen," and has further testified that the levels of contamination on the property "present an imminent and substantial endangerment to the public health or environment" (Affidavit of Robert Kohnen, Doc. # 21, Exh. 2, ¶ 5).

■ Plaintiffs urge this Court to rely upon two United States Environmental Protection Agency's regulations pertaining to benzene, to determine that the levels of benzene found on the property "may present an imminent or substantial endangerment to health or the environment." However, neither regulation allows this Court to hold, as a matter of law, that the levels of benzene on their property meet this standard.

*First*, Part 141 of Volume 40 of the Code of Federal Regulations, which pertains to safe drinking water standards, sets forth the following required language (pertaining to benzene) which must be included in any notices of violations of maximum containment levels, notices of the granting of exemptions or variances, or notices of violations thereof:

> The United States [EPA] sets drinking water standards and has determined that benzene is a health concern at certain levels of exposure. This chemical is used as a solvent and degreaser of metals. It is also a major component of gasoline. Drinking water contamination generally results from leaking underground gasoline and petroleum tanks or improper waste disposal. This chemical has been associated with significantly increased risks of leukemia among certain industrial workers who were exposed to relatively large amounts of this chemical during their working careers. This chemical has also been shown to cause cancer in laboratory animals when the animals are exposed at high levels over their lifetimes. Chemicals that cause increased risk of cancer among exposed industrial workers and in laboratory animals also may increase the risk of cancer in humans who are exposed at lower levels over long periods of time. EPA has set the enforceable drinking water standard for benzene at 0.005 parts per million (ppm) to reduce the risk of cancer or other adverse health effects which have been observed in human and laboratory animals. Drinking water which meets this standard is associated with little to none of this risk and should be considered safe.

40 C.F.R. § 141.32(e)(5). Assuming *arguendo* that this regulation, which pertains to the

required language in notices, is relevant to this action, it is nevertheless inapposite here because of the present state of the record. There is simply no evidence as to either the precise quantity of gasoline which remains in the soil; whether this seepage either currently has an effect on the drinking water, or is likely to have such an effect; or what the magnitude of such an effect might be, in regard to health or the environment. Although this Court could speculate on these issues, such speculation would not provide a proper basis for summary judgment.[3]

*Second,* Plaintiffs cite to a regulation showing that the EPA has set a "maximum containment level goal" of zero for benzene. 40 C.F.R. § 141.50(a)(1). However, this Court notes that the term "maximum containment level goal" is defined as "the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, and which allows an adequate margin of safety. Maximum containment level goals are *nonenforceable* health goals." 40 C.F.R. § 141.2 (emphasis added). Although this regulation might support an argument that it would be safer to have no benzene on Plaintiffs' property, it fails to establish, as a matter of law, that the levels of benzene on the property "may present an imminent and substantial endangerment to health or the environment."

■ In addition to their reliance on these regulations, Plaintiffs have provided an affidavit from Robert Kohnen, a chemical engineer, who has testified to his opinion that "the levels of benzene contamination ... are of such a magnitude in excess of the minimal standards set by governmental entities to protect public health and welfare and the environment, that such levels of contamination present an imminent and substantial endangerment to the public health or the environment." (Doc. # 21, Exh. 2, ¶ 5). In response, Defendant has provided an affidavit from Daniel Loreta, an environmental engineer, who has testified to his opinion that "the subject site's level of contamination does not present an imminent and substantial endangerment to health or the environment." (Doc. # 25, Exh. A, ¶ 5). This disagreement by the experts retained by each of the parties, would appear to create a genuine issue of material fact as to the ultimate legal issue in this case.[4]

Based upon the foregoing, and construing the evidence in the manner most favorably to the Defendant, as the non-moving party, this Court concludes that there exists a genuine issue of material fact as to whether the contamination on the Plaintiffs' property "may present an imminent and substantial endangerment to health or the environment." Moreover, Defendant is not collaterally estopped from litigating this issue. Accordingly, Plaintiffs' Motion for Summary Judgment (Doc. # 21) is OVERRULED.

WHEREFORE, based upon the aforesaid, Plaintiffs' Motion for Summary Judgment (Doc. # 21) is OVERRULED.

---

3. This Court notes here that the paucity of the record before it distinguishes this action from the cases cited by Plaintiffs, in which each court held, as a matter of law, that the leakage of gasoline constituted an imminent and substantial endangerment to health or the environment. *See Paper Recycling, Inc. v. Amoco Oil Co.,* 856 F.Supp. 671, 678 (N.D.Ga.1993) (holding that 5,000 to 21,000 gallons of petroleum product on the water table may present an imminent and substantial endangerment); *Zands v. Nelson,* 797 F.Supp. 805, 808–09 (S.D.Cal.1992) (holding that where at least 3,000 to 10,000 gallons of contamination had occurred, there was an imminent and substantial endangerment).

4. In addition, Defendant has provided a report, dated August 15, 1990, which was allegedly issued by the Ohio State Fire Marshal, Bureau of Underground Storage Tanks, and which categorizes the Plaintiffs' property as a low level of priority (Doc. # 24, Exh. B). Because, however, this exhibit was not properly authenticated as required by Rule 56(e) of the Federal Rules of Civil Procedure, this Court will not consider it when ruling upon Plaintiffs' Motion herein, nor will it consider the "Work Plan" attached as Exhibit C, which purports to explain the meaning of the report, but is similarly not properly authenticated.