**Donald P. DAVIS and Maxine Elaine Davis, Plaintiffs–Appellants,**

v.

**SUN OIL COMPANY, Defendant–Appellee.**

No. 96–4077.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 1, 1997.

Decided June 24, 1998.

See Also 671 N.E.2d 1049.

A. Mark Segreti, Jr. (argued and briefed), Haffey & Segreti, Dayton, OH, for Plaintiffs–Appellants.

Michael R. Blumenthal (argued and briefed), David S. Hoffman (briefed), McMahon, DeGulis & Hoffman, Cleveland, OH, for Defendant–Appellee.

Before: MERRITT, WELLFORD, and BOGGS, Circuit Judges.

The court delivered a PER CURIAM opinion. BOGGS, J. (pp. 613–615), delivered a separate opinion concurring in part and dissenting in part.

## OPINION

PER CURIAM.

Donald and Maxine Davis brought this action under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B), against Sun Oil Co. ("Sun"). In *Davis v. Sun Oil Co.*, 929 F.Supp. 1077 (S.D.Ohio 1996) ("*Davis I*"), the district court denied the Davises' motion for summary judgment, and in *Davis v. Sun Oil Co.*, 953 F.Supp. 890 (S.D.Ohio 1996) ("*Davis II*"), it granted Sun's motion for summary judgment. We **AFFIRM**.

### I

The facts of this case may be found in detail in *Davis I* and *Davis II*, as well as in *Davis v. Sun Refining and Marketing Co.*, 109 Ohio App.3d 42, 671 N.E.2d 1049 (1996), of which we take judicial notice. To summarize the situation, in 1985 the Davises purchased from Sun a parcel of land on which Sun had operated a Sunoco filling station. Prior to the sale, Sun told the Davises that it was removing the four 6,000 gallon underground gasoline storage tanks on the property, and did so. In 1989, the Davises contracted to sell the land to United Dairy Farmers ("UDF"), subject to an environmental inspection. When UDF's consultants tested the land, they discovered quantities of gasoline in the soil, emanating from buried gasoline pipes that had connected the tanks and the gas pumps; Sun had left the piping in place and covered it up with dirt when the tanks were removed. Faced with the prospect of a lawsuit, Sun executed with the Davises a letter agreement pledging to clean up the site.

After Sun largely failed to do so, the Davises sued Sun in state court in May 1991, alleging nuisance, breach of contract, and fraud.[1] In September of 1993, a referee conducted a three-day trial, and in December of 1993, filed a report with the court recommending that Sun be found to be in breach of contract, and that the Davises be awarded damages equal to what they had already

spent in an effort to clean up the site, and specific performance of the letter agreement. The referee also recommended that Sun be found liable for fraud, and that the Davises be awarded punitive damages. In March of 1995, the state court issued a decision and entry adopting the referee's recommendations. As to the specific performance remedy, the court required Sun to clean up the site so as to satisfy state regulatory guidelines within one year, and to post a $400,000 bond as guarantee. In January, 1996, the state court of appeals affirmed the decision of the trial court, except that it modified the specific performance award, on the grounds that cleaning up the site so as to meet state regulations might take more than one year. The appellate court ordered Sun "to complete the cleanup in an expedited manner, in full accordance with all requirements and regulations promulgated by the fire marshall [sic] [the state agent charged with regulating underground storage tanks]." *Davis*, 671 N.E.2d 1049.

Meanwhile, in October of 1993, the Davises brought this RCRA action in federal district court, alleging that Sun, by leaving gasoline buried in the property, had "contributed to and caused the disposal of solid or hazardous waste on the property which may present an imminent and substantial endangerment to health or environment," in violation of RCRA, 42 U.S.C. § 6972(a)(1)(B). The court held a pretrial conference and, in July of 1994, issued the first of a series of orders staying proceedings pending the resolution of the litigation in state court, and requesting timely status reports with respect to the other action pending.

### II

In July, 1995, the Davises moved for summary judgment. They argued that

the essential factual elements of a claim under 42 U.S.C. § 6972 have been finally determined by the Court of Common Pleas of Cuyahoga County, Ohio ... [which] specifically found that the contamination indicated "high levels of benzene, toluene, eth-

---

1. The complaint in state court originally included a claims for violations of federal law, which were eliminated in an amended complaint. No specific statutory basis was stated for the federal allegations, and we do not know why the Davises dropped them from the lawsuit.

yl benzene and xylenes (together called 'BTEX'), lead and PHC. The PHC levels exceeded the State's guidelines." ... The several findings of high levels of benzene necessarily determines that there may be an imminent and substantial endangerment. *See* 40 C.F.R. §§ 141.32 and 141.50(a). Thus, through the principles of *collateral estoppel,* Defendant Sun is now estopped from contesting the findings of the Court of Common Pleas.... Under Ohio law, those issues are determined and are entitled to preclusive effect. 28 U.S.C. § 1738 requires that the Court give them the same preclusive effect. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School Bd.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

The district court rejected the Davises' argument, correctly observing that the precise issue of whether the contamination "may present an imminent and substantial endangerment to health or the environment" had never been actually litigated and determined by the state court. Therefore, the issue was not precluded from further litigation. 929 F.Supp. at 1081.[2]

Further, the court held that summary judgment was inappropriate because there was a genuine issue of material fact as to whether the contamination "may present an imminent and substantial endangerment." The Davises and Sun each presented affidavits by consulting engineers, who, after evaluating the same environmental assessments that had been submitted as evidence in state court reached—unsurprisingly—opposite conclusions on this question. As the court observed, "[t]his disagreement by the experts retained by each of the parties, would appear to create a genuine issue of material fact as to the ultimate legal issue in this case." *Id.* at 1082.

The court also rejected the Davises' attempted use of the Environmental Protection Agency regulations cited in their brief to establish a standard for the level of contamination that might, as a matter of law, "present an imminent and substantial danger." The district court noted that the cited EPA regulations pertain to contamination levels in drinking water, not in soil, and observed:

> There is simply no evidence as to either the precise quantity of gasoline which remains in the soil; whether this seepage either currently has an effect on the drinking water, or is likely to have such an effect; or what the magnitude of such an effect might be, in regard to health or the environment. Although this Court could speculate on these issues, such speculation would not provide a proper basis for summary judgment.

RCRA is a remedial measure that courts have tended to construe and apply in a liberal, though not unbridled, manner. The Second Circuit has discussed the statute as follows:

> When congress enacted RCRA in 1976, it sought to close "the last remaining loophole in environmental law, that of unregulated land disposal of discarded materials and hazardous wastes." RCRA's waste management requirements for disposal facilities are designed not only to prevent, but also to mitigate endangerments to public health and the environment.

> Significantly, congress used the word "may" to preface the standard of liability: "present an imminent and substantial endangerment to health or the environment". This is "expansive language", which is "intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate *any* risk posed by toxic wastes."

> The statute is "basically a prospective act designed to prevent improper disposal of hazardous wastes in the future". It is

**2.** Although the judgment of the Ohio court did not settle as a matter of law the issue of RCRA liability, we hold that other facts and issues actually and necessarily litigated and determined by the Ohio court are precluded from relitigation, in accordance with Ohio's law of issue preclusion.

*See Whitehead v. General Tel. Co.,* 20 Ohio St.2d 108, 254 N.E.2d 10, 13 (1969); *overruled in part by Grava v. Parkman Township,* 73 Ohio St.3d 379, 653 N.E.2d 226, 229 (1995); *see also Hapgood v. City of Warren,* 127 F.3d 490 (6th Cir. 1997).

not specifically limited to emergency-type situations. A finding of "immanency" does not require a showing that actual harm will occur immediately so long as the risk of threatened harm is present: "An 'imminent hazard' may be declared at any point in a chain of events which may ultimately result in harm to the public." Imminence refers "to the nature of the threat rather than identification of the time when the endangerment initially arose."

In addition, a finding that an activity may present an imminent and substantial endangerment does not require actual harm. Courts have consistently held that "endangerment" means a threatened or potential harm and does not require proof of actual harm.

*Dague v. City of Burlington,* 935 F.2d 1343, 1355–56 (2d Cir.1991) (citations omitted).[3]

■ In keeping with the language recited in *Dague,* courts might in some cases be justified in holding, as a matter of law, that a certain degree of hazardous waste at a particular site "may present an imminent and substantial endangerment." They could do so where the specific circumstances of the disposal site presented such large and unmitigated hazards (such as the amount and type of waste, combined with its proximity to the public) that "reasonable minds could not differ as to the import of the evidence." *See*

*Anderson v. Liberty Lobby,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The district court cited, and correctly distinguished, two such cases, in which the particular facts had been held to justify summary judgment. *Davis II,* 953 F.Supp. at 893 n. 3. We agree with the district court's explanation, noted above, of why the determination by the Ohio court that Sun had polluted the soil in that manner and degree shown by the submitted evidence was not by itself adequate to settle as a matter of law the question of whether the pollution "may present an imminent and substantial endangerment." Accordingly, we affirm the district court's denial of the Davises' motion for summary judgment.

### III

The district court next addressed Sun's claim that the doctrine of *res judicata* prevents the Davises from maintaining this federal action. In its cross-motion for summary judgment, Sun argued that "Plaintiffs have obtained the only relief they are entitled to under 42 U.S.C. § 6972 by the decision and order in plaintiffs' parallel state cause of action. By the application of the common law doctrine of *res judicata,* plaintiffs cannot maintain the present action having obtained the same relief in state court."[4] Were the

---

3. In *Meghrig v. KFC Western, Inc.,* 516 U.S. 479, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996), the Supreme Court stated that, under § 6972(a)(1), "[a]n endangerment can only be imminent if it threatens to occur immediately." *Id.* 116 S.Ct. at 1255 (internal quotations and citation to dictionary definition of "imminent" omitted). The Court made this observation in support of its holding that the citizen-suit provision of RCRA did not afford as a remedy the costs of a clean-up undertaken prior to the filing of the lawsuit; once a site is cleaned up, it can no longer present the threat that is a predicate for the action. It is not clear whether the Court intended to refute the reading of "imminence" contained in cases such as *Dague:* a looming threat of harm, but not necessarily a looming harm.

4. It would be possible to reformulate Sun's theory as a challenge to the Davises' standing to bring their RCRA action—specifically, as an assertion that the Davises fail to meet the "remedial benefit" requirement of standing. *See Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) (plaintiff lacked standing to

challenge city's zoning ordinance where unable to show that "he personally would benefit in a tangible way from the court's intervention"); *Linda R.S. v. Richard D.,* 410 U.S. 614, 618, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (mother had no standing in suit to compel prosecution of father for failure to pay child support where successful action "would result only in the jailing of the child's father. The prospect that prosecution will ... result in payment of support can, at best, be termed only speculative."). *See generally* 13 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 3531.6. Sun may not prevail on such a theory, however, because the Davises may benefit from the pressure placed on Sun to remedy the pollution by the daily-accruing penalties.

Alternatively, Sun's argument could be viewed as expressing the facet of the mootness doctrine under which it may be held that "[i]f full relief is accorded by another tribunal, a proceeding seeking the same relief is moot...." *See* 13A Wright & Miller § 3533.2 & n. 28 (citing cases). Where substantial civil penalties might be assessed against Sun, the case is clearly not moot.

Davises to win the RCRA suit, Sun argued, they would be entitled to nothing more than an order requiring Sun to take "necessary action," i.e., to investigate the site, to remediate the site, etc. Sun claims that the Davises have, in fact, already obtained an order from the state court requiring Sun "to clean up the contamination on the property." In an attempt to demonstrate that the Davises had already obtained all the relief they could get, Sun argued (correctly, in light of *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 116 S.Ct. 1251, 134 L.Ed.2d 121 (1996), *see* n. 3 *supra* ) that the Davises would not be entitled under RCRA to compensation for the costs they had incurred in their partial efforts to clean up the site. Sun also argued that the Davises could not seek imposition of the civil penalties available under § 6928(g), which provides:

> Any person who violates any requirement of this subchapter shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation. Each day of such violation shall, for purposes of this subsection, constitute a separate violation.

Initially, the district court rejected Sun's argument that the Davises could not enforce the civil penalty provision as a private party. Indeed, civil penalties payable to the United States may be awarded in a citizen suit brought under § 6972(a). *See Clorox Co. v. Chromium Corp.*, 158 F.R.D. 120, 128 (N.D.Ill.1994); *cf. Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1, 14 n. 25, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981) (recognizing availability of civil penalties in suits brought under 33 U.S.C. § 1365(a), the citizen-suit provision of the Federal Water Pollution Control Amendment of 1972).

The district court then noted Sun's argument that the Davises could not maintain the federal action under the doctrine of *res judicata*, because they had obtained in state court all the relief the district court could have given them in the federal litigation. The court declined to address that claim specifically, however, because it found that even if the Davises had not obtained all such relief in state court, Ohio's laws on claim preclusion prevented the Davises from maintaining the federal action.

The district court relied on *Stuhlreyer v. Armco, Inc.*, 12 F.3d 75 (6th Cir.1993), as an accurate statement of Ohio's law on claim preclusion:

> State judicial proceedings are entitled to the same preclusive effect in federal court as they would receive in the judgment-rendering state.... In Ohio, " '[t]he doctrine of res judicata is that an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue, as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.' " ... This includes all claims which were or might have been litigated in the first lawsuit.... Thus, under Ohio law, claim preclusion requires that the rendering court possess subject matter jurisdiction over the original claim.

*Stuhlreyer*, 12 F.3d at 77 (citations omitted); *see Grava v. Parkman Township*, 73 Ohio St.3d 379, 653 N.E.2d 226, 227 (1995) (holding that "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action."). In accordance with this rule against "claim-splitting," the district court turned to the question of whether the RCRA suit "might have been litigated" in the state court proceedings or whether, instead, the federal courts enjoyed exclusive jurisdiction over such matters.

The district court recognized that *Tafflin v. Levitt*, 493 U.S. 455, 110 S.Ct. 792, 107 L.Ed.2d 887 (1990), and *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), are important in resolving the question of whether federal jurisdiction is exclusive in citizen suits brought under the RCRA. These two cases require that Congress either expressly states that federal jurisdiction is exclusive or in some other affirmative way overcomes the strong presumption that jurisdiction is concurrent with state courts. This doctrine is

an integral part of our system of federalism. The federal courts cannot create Congressional intent, if it is left unstated, by making an assumption that federal jurisdiction should be exclusive. Rather, the strong presumption is in favor of concurrent jurisdiction in the state courts. *See Holmes Fin. Assocs. v. Resolution Trust Corp.*, 33 F.3d 561, 565 (6th Cir.1994) (holding that Congress must "affirmatively divest" the state courts of their "presumptive competence" to hear cases arising under federal law).

■ In the instant case, we find that the citizen suit provision of the RCRA does not expressly provide for exclusive jurisdiction.[5] As in the legislation scrutinized in *Tafflin* and *Yellow Freight,* Congress did not specifically deal with the question. We disagree with the analysis in *Middlesex County Bd. of Chosen Freeholders v. New Jersey,* 645 F.Supp. 715 (D.N.J.1986), in which the district court held that the enforcement provision of the RCRA creates exclusive jurisdiction in the federal courts. That provision provides that RCRA private suits *"shall be brought* in the district court for the district in which the alleged violation occurred or the alleged endangerment may occur." 42 U.S.C. § 6972 (emphasis added). The *Middlesex* court found that the term "shall" was mandatory, not discretionary. The court also found that the legislative history of the RCRA indicated that "Congress did not contemplate that RCRA suits would be brought in State courts." *Id.* at 719. We disagree with that reasoning. In our view, the term "shall" as it is used in the statute does not affirmatively divest the state courts of their presumptive jurisdiction. In *Yellow Freight,* the Supreme Court rejected a similar argument made with respect to a provision in Title VII which states that "[e]ach United States district court and each United States court of a place subject to the jurisdiction of the United States *shall have jurisdiction* under this subchapter." *Yellow Freight,* 494 U.S. at 823, 110 S.Ct. 1566 (quoting 42 U.S.C. § 2000e–5(f)(3) (emphasis added)). The "shall have" language in that statute was not deemed to be sufficient evidence that Con-

gress intended to divest the state courts of jurisdiction over those matters. In the same way, the "shall" language in the RCRA enforcement provision does not grant exclusive jurisdiction to the federal courts in suits brought pursuant thereto.

■ The dissent is of the view that, even if jurisdiction is concurrent, Sun may not rely on a *res judicata* defense because it acquiesced in the claim-splitting. We disagree. Sun gave notice to the plaintiffs that it would rely on the defense of res judicata in its answer, which specifically states that Sun is relying upon the doctrine of *res judicata* as a defense. The district court relied upon that pleading and held the doctrine of *res judicata* applicable as a defense, and the court did not err in holding that the doctrine applies. Therefore, the proper application of the doctrine precludes this action in federal court. We conclude, moreover, that the defense was not waived in the district court. Having stated in its answer that "Plaintiffs' claims are barred by the doctrine of res judicata," defendant may rely on this defense and we find no error in the district court's determination.

■ We join with the dissent that ¶ 26 of the RESTATEMENT OF JUDGMENTS adopted in *Grava v. Parkman Township,* 73 Ohio St.3d 379, 653 N.E.2d 226, 229 (1995), precludes claim-splitting except where "the parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein." Sun did not agree to plaintiff's claim-splitting, and we cannot agree with the dissent that it acquiesced in this respect. Sun defended on the doctrines of both waiver and *res judicata.* We do not construe *Matter of Super Van, Inc.,* 92 F.3d 366 (5th Cir.1996), to support plaintiff's position in this case. *Super Van* defendants did not plead *res judicata,* and defendants indicated to the bankruptcy court that they "preferred not to have the two action [one in state court and one in federal court] consolidated." *Id.* at 371. By reason of this action, contrary to defendant's posture in the instant case, defendants were deemed to have acquiesced in the plaintiff's claim-splitting. We

---

5. The Davises do not argue that the statutory scheme of the RCRA would plainly be disrupted by the exercise of state-court jurisdiction. *See Holmes,* 33 F.3d at 569.

believe, therefore, contrary to the dissent, that plaintiffs were not treated unjustly and that they had fair notice of the defendant's claim of *res judicata.*

We are mindful, as the dissent points out, that the defense of *res judicata* can mean several things. The district court relied on the "other action pending" facet of the *res judicata* doctrine in finding that this federal suit was barred. It is unfortunate that the district court did not earlier rule on the issue, at a time when the Davises could have had the opportunity to amend their state-court action to add the RCRA suit if they so desired. But we are of the view that Sun properly asserted the defense in its answer, and that the district court was warranted in addressing all aspects of the *res judicata* claim.

Accordingly, we **AFFIRM** the denial of plaintiffs' motion for summary judgment and the granting of defendant's motion, and entry of judgment for the defendant.

BOGGS, Circuit Judge, concurring in part and dissenting in part.

I concur in parts I and II of the court's opinion in this case. I dissent from the holding in part III that Sun Oil's general invocation of "res judicata" in its amended answer suffices to overcome Sun's acquiescence in the maintenance by Davis of concurrent actions in state court and federal court.

Section 24 of the Restatement of Judgments (2d) (1982), which articulates the rule against claim-splitting, provides that it is subject to the exceptions described in § 26. Consequently, when the Ohio Supreme Court "expressly adhere[d] to the modern application of the doctrine of *res judicata* " found in §§ 24–25, *see Grava v. Parkman Township,* 73 Ohio St.3d 379, 653 N.E.2d 226, 229 (1995), it also adopted § 26 of the Restatement, which provides, in pertinent part:

EXCEPTIONS TO THE GENERAL RULE CONCERNING SPLITTING

(1) When any of the following circumstances exists, the general rule of § 24 does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

(a) The parties have agreed in terms or in effect that the plaintiff may split his claim, or the defendant has acquiesced therein....

The accompanying comment states in part:

A main purpose of the general rule stated in § 24 is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable where the defendant consents, in express words or otherwise, to the splitting of the claim.... Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim, judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim.

Sun filed an amended answer to the Davises' RCRA suit on March 22, 1994, asserting, among other defenses, that "Plaintiff's claims are barred by the doctrine of waiver," and "Plaintiff's claims are barred by the doctrine of res judicata." The question arises whether this was an objection, or a sufficient one, to the Davises' claim-splitting. I conclude that it was not, and that Sun thereby in effect acquiesced in the bringing of the federal action. *See, e.g., In re Super Van Inc.,* 92 F.3d 366, 371 (5th Cir.1996); *Clements v. Airport Auth. of Washoe County,* 69 F.3d 321, 328 (9th Cir.1995); *Bradley v. Pittsburgh Bd. of Educ.,* 913 F.2d 1064, 1072–73 (3d Cir.1990); *Calderon Rosado v. General Elec. Circuit Breakers, Inc.,* 805 F.2d 1085, 1087 (1st Cir.1986).

Conceivably the mention of waiver suggests that the Davises waived their opportunity to bring the RCRA claim in state court, but that is a speculation never borne out in Sun's briefs below. As for the defense of res judicata, it is true that claim-splitting falls under that broad heading. But Sun's brief below suggests that by claiming this defense,

it was not complaining of claim-splitting, but was advancing its theory of full remedies discussed above at 610–612.[1]

I note, too, the boiler-plate nature of Sun's amended answer. Here it is useful to look to the rules pertaining to the pleading of affirmative defenses. I recognize, of course, that FED R. CIV. P. 8(e) provides that "[n]o technical forms of pleadings or motions are required." But requiring an affirmative defense to be stated in an intelligible manner is not a mere formalism. While the rule against splitting claims is essential to the repose to which defendants are ultimately entitled, it must be applied fairly to plaintiffs, as well. An essential aspect of that fairness is adequate notice of the nature of the affirmative defense. "Res judicata and collateral estoppel are affirmative defenses that must be pleaded.... The purpose of such pleadings is to give the opposing party notice of the plea of estoppel and a chance to argue, if he can, why the imposition of an estoppel would be inappropriate." *Blonder–Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 350, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). "An affirmative defense may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, *as long as it gives plaintiff fair notice of the nature of the defense.*" 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 5 FEDERAL PRACTICE AND PROCEDURE § 1274 (emphasis added). "Rule 8(c), by requiring defendant to plead his defense or risk waiving it, also serves the purpose of giving the opposing party notice of the defense and an opportunity to argue why his claim should not be barred completely." *Id.* at § 1270. "Another highly relevant consideration [as to whether a theory must be pleaded as an affirmative defense] is whether plaintiff will be taken by surprise by the assertion at trial of a defense not pleaded affirmatively by the defendant." *Id.* at § 1271. "The requirement that affirmative defenses be specifically pleaded is based on notions of fair play. A

party should not have to deal with an extraneous issue in a lawsuit unless it is specifically brought to his attention.... More important, what matters is not whether the magic words 'affirmative defense' appears in pleadings, but whether the Court and the parties were aware of the issues involved." *Baker v. City of Detroit*, 483 F.Supp. 919, 921 (E.D.Mich.1979), *aff'd on other grounds sub nom. Bratton v. City of Detroit*, 704 F.2d 878, *vacated on rehearing*, 712 F.2d 222 (6th Cir.1983).

In short, I do not think that Sun's cloudy answer sufficed—if such was its intent at all—to put the Davises on fair notice that Sun objected to the Davises' maintenance of separate state and federal actions. A useful comparison can be found in *Diversified Foods, Inc. v. First Nat'l Bank of Boston*, 985 F.2d 27, 29 (1st Cir.1993), where, in answering the complaint in the successive federal suit, the defendants "included as a defense the assertion that the borrowers 'have improperly split their causes of action, having previously filed in another court another complaint arising out of the same transaction or series of transactions.' " The court held that defendants who had presented such a plain objection could hardly be found to have acquiesced in the split claim.

The prejudice to the Davises is obvious. If they had perceived such an objection, then they could have repaired to state court before the entry of judgment, seeking to amend their complaint to include a RCRA count. Or they could have asked the district court to strike the defense, and mustered arguments at that time in favor of exclusive federal jurisdiction.

The difficulty for the Davises was compounded by the fact that no court, so far as I can tell, had ever held that RCRA cases could be brought in state court, and that numerous courts had either held or assumed that jurisdiction was exclusively federal.[2]

---

1. This court has had occasion to comment on the confusion caused by the use of the broad term "res judicata," and to "express our hope that future litigants, in the interests of precision and clarity, will formulate arguments which refer solely to issue or claim preclusion and which refrain from using the predecessors of those terms, whose meanings have become so convoluted." *Barnes v. McDowell*, 848 F.2d 725, 728 n. 5 (6th Cir.1988).

2. *See Middlesex County Bd. of Chosen Freeholders v. New Jersey*, 645 F.Supp. 715, 719 (D.N.J.1986); *Jilot v. Colorado*, 944 P.2d 566, 568–69

Nor do we find any report of a RCRA citizen action ever being brought in an Ohio court. The district court's holding on this matter is at least plausible, but I cannot say that resolution of that question is sufficiently plain under *Yellow Freight* and *Holmes* to have put the Davises fairly on notice that they could bring the RCRA allegation in Ohio court. *See Diversified Foods*, 985 F.2d at 31 (recognizing that a good-faith belief in exclusive federal jurisdiction might excuse a failure to bring a federal claim as part of a previous state-court action, but rejecting that excuse where the belief in exclusive federal jurisdiction was "formed in the face of two circuit decisions to the contrary.") Indeed, if the district court held strong views on this matter, it might have alerted the parties, or perhaps have asked them to brief the issue. As it was, for the year and a half prior to the state court judgment, the Davises' federal and state claims were pending simultaneously. The district court requested and received periodic status reports. It was reasonable for the Davises to believe that, once the state court proceeding was over, they could proceed with their RCRA complaint in federal court. The record shows (and Sun confirmed at oral argument), that, other than the vague statements in its amended answer, Sun never voiced an objection to the Davises' splitting of the claims.

Thus, I would hold that the Davises' RCRA suit was not barred by the application of Ohio's rule against claim-splitting, and may proceed. I therefore respectfully dissent.

(Colo.App.1996)(unpublished pending appeal). A number of other courts have stated or assumed that RCRA jurisdiction is exclusively federal. Together, the effect of these cases is an emphatic consensus that RCRA jurisdiction is exclusively federal. Yet none of the cases apply with full rigor the analytic framework erected by the Supreme Court in the line of cases beginning with *Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 101 S.Ct. 2870, 69 L.Ed.2d 784 (1981) and culminating in *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990).

The Eighth Circuit has flatly stated that "RCRA places exclusive jurisdiction in federal courts for suits brought pursuant to section 6972(a)(1)...." *Blue Legs v. Bureau of Indian Affairs*, 867 F.2d 1094, 1098 (8th Cir.1989). Thus, it was not necessary, or even possible, to exhaust certain tribal remedies, as normally required. True, *Blue Legs* preceded by two years the stringent language of *Yellow Freight* noted by this court in *Holmes*. Nonetheless, since *Yellow Freight*, *Blue Legs* has repeatedly been cited as good law—though, again, generally without much jurisdictional analysis under *Yellow Freight*. See, e.g., *Fletcher v. United States*, 116 F.3d 1315, 1327 (10th Cir.1997); *Kerr–McGee Corp. v. Farley*, 115 F.3d 1498, 1502 (10th Cir.1997); *Reservation Tel. Coop. v. Three Affiliated Tribes of the Fort Berthold Reservation*, 76 F.3d 181, 185–86 (8th Cir. 1996). Other courts have, without citing *Blue Legs*, reached the same conclusion. *See White & Brewer Trucking, Inc. v. Donley*, 952 F.Supp. 1306 (C.D.Ill.1997) (*Burford* abstention inappropriate when federal action in which abstention is sought contains RCRA claims, over which federal courts have exclusive jurisdiction).